**Frank MURRAY, Plaintiff,**

v.

**DOMINICK CORPORATION OF CANADA, LTD., John S. Jenkins, and John Halsey, Defendants.**

**No. 85 Civ. 6121 (RWS).**

United States District Court, S.D. New York.

Oct. 20, 1987.

Brown, Raysman & Millstein (Peter Brown, of counsel) New York City, for plaintiff.

Brown & Wood (Joseph G. Riemer, III, Paul Windels, III, of counsel), New York City, for defendants.

## OPINION

SWEET, District Judge.

This action came on for trial before the court and a jury between September 8 and 14, 1987. On September 14, during the presentation of defendants' case, the complaint was dismissed by oral order. The trial transcript dated September 14, 1987 containing the oral order dismissing the complaint is hereby supplemented by the following facts and conclusions.

*Facts*

Plaintiff Frank Murray ("Murray") is a citizen of New York State and lives in New York City. Defendant Dominick Corporation of Canada, Ltd. ("Dominick Canada") is a corporation organized under the laws of the Province of Ontario, Canada and is a member of the Toronto Stock Exchange. Defendant John S. Jenkins ("Jenkins") is a resident of Canada and at all times relevant to this action was the President and Chairman of the Board of Dominick Canada and the registered representative for Murray's account with that firm.

In late 1979, Murray went to the offices of Dominick & Dominick, Incorporated ("DDI") and Dominick Investor Services Corporation ("DISC") located in New York, New York (collectively "Dominick New York"). While at the offices of Dominick New York, Murray had a telephone conversation with Jenkins in which Murray told Jenkins what securities he owned at that time. Shortly thereafter, Murray opened a cash trading account in the amount of $10,-000 with Dominick Canada.

In December 1979 Murray's cash account became a margin account. He began delivering stocks to be placed into the margin account with Dominick Canada by bringing the stocks to DDI, which in turn would arrange to transfer those stocks to Dominick Canada. During the period from November 1979 to August 1982, Murray deposited cash and securities into his account at Dominick Canada totalling approximately $300,000. When the securities remaining in Murray's account were returned to him in August 1982, they had a trading value of approximately $70,000.

## Contentions of the Parties

In his complaint, Murray asserted the following claims against Jenkins and Dominick Canada:

(1) By purchasing unsuitable stocks and executing excessive transactions, Jenkins committed fraud within the meaning of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 of the rules of the Securities and Exchange Commission;

(2) By disobeying instructions from Murray, purchasing unsuitable stock, and carrying out excessive transactions, Jenkins breached a fiduciary duty to Murray; and

(3) Jenkins was an agent of Dominick Canada, and Dominick Canada (a) knew or should have known of Jenkins' conduct, (b) failed to supervise Jenkins' activities adequately, and (c) participated in, approved and accepted the benefits of Jenkins conduct by sharing in the commissions earned and the interest paid on Murray's margin loans.

In their answer to the complaint, Dominick Canada and Jenkins deny that Murray has been damaged in any way by their actions and claim that, on the contrary, any losses in Murray's accounts were caused entirely by his choice of investments. They also assert that Murray's claims are barred by the doctrines of waiver, estoppel, and ratification.

## I. Order of Dismissal

On December 10, 1986, a pre-trial discovery conference was held at which an oral order issued directing Murray to comply in full with defendants' discovery requests for all documents relating to any bank or brokerage account in which Murray had a beneficial interest, particularly any accounts with Merrill Lynch Royal Securities ("Merrill Lynch"). Prior to the pre-trial conference, Murray had refused to produce any documents other than those relating to his accounts with Dominick New York and Dominick Canada.

During the course of the trial, it became apparent that Murray had not complied in full with the December 10 discovery order. In particular, it was discovered that Murray had failed to turn over to defendants documents pertaining to accounts he held and continued to hold with a Merrill Lynch branch in Canada. These documents revealed that, despite Murray's sworn testimony to the contrary, he had indeed maintained a margin account with a brokerage house other than Dominick Canada.

The extent of the trading in the Canadian Merrill Lynch account, the circumstances of that trading, the discussions which accompanied that trading and the way in which it was conducted relate directly to all three of Murray's claims and Dominick Canada's defenses. Neither counsel for the defendants nor the plaintiff had had any discovery relating to this apparently contemporaneous Canadian account. Although I had denied a motion to dismiss in order to have a complete record for purposes of appellate review, to send this case to the jury in the face of either an inadequate defense or a defense based on recently revealed information about which the

defendants had every right to inquire would be an empty act. Therefore the complaint was dismissed for violations of Fed.R.Civ.P. 37(d) and Fed.R.Civ.P. 11.[1]

### A. *Rule 37(d) Dismissal*

■ The law is well-settled in this Circuit that "dismissal under Fed.R.Civ.P. 37 is a drastic penalty which should be imposed only in extreme circumstances." *Israel Aircraft Indus., Ltd. v. Standard Precision,* 559 F.2d 203, 208 (2d Cir.1977). The sanction of dismissal requires that a court order be in effect, *Id.,* and that the plaintiff's refusal to comply with the court order be due to "willfulness, bad faith, or any fault" of the plaintiff. *Salahuddin v. Harris,* 782 F.2d 1127, 1133 (2d Cir.1986).

■ In this case, an explicit oral order issued on December 10, 1986 directing Murray, over his prior refusals, to produce documents relating to, *inter alia,* any accounts he had with Merrill Lynch. *Cf. Penthouse Int'l, Ltd. v. Playboy Enterprises,* 663 F.2d 371, 383 (2d Cir.1981) (explicit oral order). During depositions and at trial, Murray testified that he had closed his account with Merrill Lynch before coming to Dominick and that he had never had and never intended to have a margin account with any brokerage firm. Indeed, Murray's allegation that Jenkins created a margin account that was inappropriate for him in light of his investment objectives forms the linchpin of his claims of unsuitability, churning and breach of fiduciary duty. The discovery at trial of documents describing accounts that Murray continued to maintain with Merrill Lynch after setting up an account with Dominick, and, moreover, a *margin* account that he maintained with Merrill Lynch in Canada, not only flatly contradicts Murray's sworn testimony but also warrants a finding that his failure to comply with the December 10 discovery order was willful and in bad faith.

### B. *Rule 11 Dismissal*

■ Rule 11 requires that every "pleading, motion, and other paper of a party represented by an attorney be signed by at least one attorney" whose signature certifies, *inter alia,* that the pleading or paper is "well grounded in fact." The rule provides further:

> If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Both the final pre-trial order and Murray's trial memorandum bear the signature of Murray's counsel. Both documents state that Murray had never had a margin account before he came to Dominick and that he was unfamiliar with how such accounts worked. Both documents assert that it was inappropriate for Jenkins to have opened a margin account for Murray in light of his investment objectives and his lack of familiarity with such accounts. In these circumstances, some sanction, beyond the mere awarding of expenses, has to be available to the court in the event that disclosures during the middle of a trial indicate that certain pre-trial submissions of the plaintiff were in violation of Rule 11. The need for an appropriate sanction is particularly true in cases, unlike this one, where a court order compelling discovery is not in effect.

The Advisory Committee Notes ("Notes") on Rule 11 analogize the deterrent use of sanctions under Rule 11 to the approach used in imposing sanctions for discovery abuses. Further, the Notes state that "[t]he court ... retains the necessary flexibility to deal appropriately with violations of the rule. It has discretion to tailor sanctions to the particular facts of the case, with which it should be well ac-

---

1. Following the dismissal of the complaint, defendants moved for a sanction of attorney's fees under Rules 11 and 37(d). That request was denied.

quainted." Fed.R.Civ.P. 11, Notes of Advisory Committee on Rules: 1983 Amendment. The disclosures at trial which revealed Murray's willful violation of his discovery obligations also indicate that the submissions on his behalf were not well grounded in fact in violation of Rule 11. Accordingly, Rule 11 provides alternate grounds for the sanction of dismissal of the complaint.

## II. *Dismissal on the Merits*

As indicated in the oral order dismissing the complaint on September 14, the severity of the dismissal sanction pursuant to Rule 37(d) is tempered somewhat by the fact the record at the close of plaintiff's case warranted dismissal both of the churning and suitability prongs of Murray's 10(b)(5) claim and the breach of fiduciary duty claim.

One of the elements of a suitability claim is a showing that the broker knew or reasonably believed that the securities he recommended to the customer were unsuitable in light of the customer's investment objectives but that he recommended them anyway. *Clark v. John Lamula Investors, Inc.*, 583 F.2d 594 (2d Cir.1978); *Leone v. Advest, Inc.*, 624 F.Supp. 297 (S.D.N.Y.1985). The record in this case does not contain adequate evidence on that issue to go to the jury. Murray's testimony reveals only that he followed Jenkins' recommendations, and his language indicates that he approved those transactions. Similarly, with respect to his churning claim, the burden was on Murray to prove that Jenkins, not he, controlled his account. *Heller v. Rothschild*, 631 F.Supp. 1422 (S.D.N.Y.1986); *Moran v. Kidder Peabody & Co.*, 609 F.Supp. 661 (S.D.N.Y.1985); *Miley v. Oppenhemier & Co., Inc.*, 637 F.2d 318 (5th Cir.1981). For the reasons just stated, there is insufficient evidence to go to the jury on the question of control by Jenkins.

Scienter is also an element of Murray's claim for breach of fiduciary duty. *Rolf v. Blyth Eastman Dillon & Co.*, 424 F.Supp. 1021 (S.D.N.Y.1977), *aff'd in part, remand on other grounds*, 570 F.2d 38 (2d Cir. 1978). To establish this element, Murray had to prove that Jenkins recklessly disregarded his duty to Murray. *Rolf v. Blyth Eastman*, 570 F.2d at 44. The record here has not established anything more than negligence on Jenkins' part.

Finally, Murray's statements of account from Dominick Canada were introduced into evidence as to the transactions that underlie Murray's claims. There is no evidence of any statements of complaint by Murray with respect to any particular stock, purchase, or sale. In light of the close attention that the evidence shows Murray paid to his accounts, his failure to object at the time they took place to any of the transactions of which he now complains supports a finding that the defenses of estoppel and ratification have been established.

For the reasons set forth above, the complaint is dismissed. Enter judgment on notice.

IT IS SO ORDERED.