**318**

**Robert Lee THOMPSON, Plaintiff,**

**v.**

**Officer HOLMES, et al., Defendants.**

**No. H85–799.**

United States District Court,
N.D. of Indiana,
South Bend Division.

May 2, 1990.

Robert Lee Thompson, pro se.

Hamilton L. Carmouche, Merrillville, Ind., for defendants.

MEMORANDUM AND ORDER

MILLER, District Judge.

In the afternoon of April 30, 1990, following a one-day trial, the jury returned a verdict for the defendants in this suit under 42 U.S.C. § 1983. The defendants moved for entry of judgment on the verdict, and the court deferred ruling for the purpose of considering the propriety of other dispositions in light of the plaintiff's conduct at trial.

Plaintiff Robert Lee Thompson was not to hear the jury's verdict. During the defendants' closing argument, Mr. Thompson, proceeding *pro se*, took offense at some of defense counsel's remarks and began to object, not in the procedural sense, but rather by the use of profanity. The court admonished Mr. Thompson to state his objection if he had one, and Mr. Thompson did so; the court overruled the objection. Counsel resumed his argument, and shortly after that, Mr. Thompson resumed his commentary, only occasionally including words appropriate in a courtroom. The court admonished Mr. Thompson to cease, but his comments continued. After another unsuccessful order to desist, the court advised Mr. Thompson that if he continued, he would be removed from the courtroom for the balance of the trial. The commentaries and profanity continued; indeed, Mr. Thompson barely hesitated during the court's admonition. The jury was excused from the courtroom, and the court again informed Mr. Thompson that if his comments continued, the trial would continue in his absence and he would not be allowed to give the closing portion of his final argument. Mr. Thompson indicated that his behavior would be unchanged, and he was removed from the courtroom. Mr. Thompson is a state inmate, and so was taken from the courtroom in the custody of state prison employees.

The defendants' attorney, Mr. Hamilton Carmouche, somehow had completed his final argument during Mr. Thompson's outburst. When the jury was returned to the courtroom in Mr. Thompson's absence, the court admonished the jury to confine its

deliberations to the evidence and proper argument and to disregard Mr. Thompson's absence. The court then read the final instructions, to which Mr. Thompson earlier had stated that he had no objection.

When the jury announced that it had reached a verdict, the court directed that Mr. Thompson be returned to the courtroom. The court informed Mr. Thompson that he had a right to be present during the return of the verdict, but that the jury would not again be exposed to the conduct that preceded his earlier removal. When the court asked Mr. Thompson if he intended to behave appropriately, Mr. Thompson rose (and was surrounded immediately by state prison personnel and the U.S. Marshals) and said the court could mail him the verdict for all he cared. To say he then was removed from the courtroom is somewhat inaccurate; he fairly led his custodians from the courtroom. The jury then returned its verdict.

Entry of judgment on the verdict, without more, would leave Mr. Thompson's conduct unpunished. Assuming, as the court must, that the jury obeyed the admonition to disregard Mr. Thompson's outburst, entry of judgment on the verdict leaves Mr. Thompson in precisely the same position in which he would have been had he behaved properly.

In retrospect, perhaps the court should have excused the jury at the time of the outburst and proceeded with direct contempt proceedings, but the time for such action has passed. *See In re Dellinger*, 461 F.2d 389 (7th Cir.1972). Further, the choice of a sanction to be imposed for contempt would have posed some difficulties. Incarceration or penal fine, while sufficient deterrence for another litigant, would be meaningless if directed at Mr. Thompson, who already is in custody and was found to be indigent when he tendered this case for filing.

Declaration of a mistrial would have been another option. Based on Mr. Thompson's comments and conduct, however, that seems to have been precisely the outcome Mr. Thompson desired.

Mr. Thompson claimed that the defendants—the Gary Police Department and two of its officers—denied him his rights under the Due Process Clause when they arrested him for burglary and took him to the police station for booking rather than to a hospital. Mr. Thompson had a broken jaw at the time of his arrest. The day after his arrest, he was taken to a hospital and given a pain-killer. After the swelling went down, surgery was performed on Mr. Thompson's jaw. Mr. Thompson sought damages for the defendants' alleged deliberate indifference to a pretrial detainee's serious medical needs. *See Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Matzker v. Herr*, 748 F.2d 1142, 1147 and n. 3 (7th Cir.1984).

Mr. Thompson called four witnesses during the trial. His first witness was Clarence Colby, the defendants' chief witness. Officer Colby's direct examination produced little of benefit to Mr. Thompson. Officer Colby was in charge of the burglary investigation. He recalled no contact with Mr. Thompson at or immediately following the arrest. Cross-examination, not surprisingly, was beneficial to the defense. Officer Colby explained the City's policy concerning medical treatment for arrestees. He also served as the vehicle for admission into evidence of Mr. Thompson's booking photograph, which Officer Colby described as showing a "slight bruise" and depicting nothing indicating a need for emergency medical treatment. Mr. Thompson then moved to strike Officer Colby's testimony, but the court denied the motion.

Mr. Thompson called Ricky Dates, Mr. Thompson's fellow inmate and co-defendant in the state burglary case, as his next witness. Mr. Dates' testimony on direct examination was of some help to the plaintiff's case, but the cross-examination was devastating. On direct examination, he testified that the first time he saw Mr. Thompson on the day of their arrest was at the city jail, and that he and Mr. Thompson were in the city jail for two days before they were taken to the hospital.

Mr. Dates' memory improved on cross-examination. After Mr. Carmouche reminded him that he was under oath, Mr. Dates testified that he was preparing to commit the burglary when Mr. Thompson

happened by and told Mr. Dates that he had been in an accident and was on his way to the hospital. Mr. Dates noted Mr. Thompson's swollen face, but asked if Mr. Thompson would mind "watching out" while Mr. Dates did his burglary business. Mr. Thompson agreed. Mr. Dates testified that he had no knowledge of what Mr. Thompson was doing while he (Dates) was in the house. Specifically, Mr. Dates did not know if, as the police reports [1] indicated, Mr. Thompson was removing property from the basement window through which Mr. Dates had entered, although Mr. Dates remembered piling some things up by the basement window.

Mr. Thompson moved to strike Mr. Dates' testimony, and the court denied the motion.

Mr. Thompson called himself as his next witness, and his testimony followed the pattern set by Ricky Dates: the cross-examination more than offset any benefit gained by the testimony on direct. Mr. Thompson testified on direct that he had been in an accident and was dazed at the time of the burglary and the arrest. He did not recall what had happened with Mr. Dates, or who he spoke to, or how he got to the hospital the next day, although he remembered asking to be taken to the hospital.

The defendants contended that Mr. Thompson's accident occurred two days before, rather than on, the day of his arrest; this contention found support in Mr. Thompson's medical records, which reported, in two places, that Mr. Thompson stated the accident had occurred three days before he was seen at the hospital. Accordingly, Mr. Carmouche asked Mr. Thompson why he had not simply waited for the police to arrive at the accident scene. Mr. Thompson responded that he left because he "was dirty": he was on probation, having just been released from prison, and had drugs and a gun with him. He left because he had to dispose of those items. Mr. Thompson did not object to the question that produced that answer.

Mr. Thompson did not move to strike his own testimony. Instead, he moved for a

mistrial based on the subjects inquired into on cross-examination. Again, the court denied the motion.

Mr. Thompson's final "witness" was William Bailey, another state inmate. Mr. Bailey was sworn as a witness and stated his name; Mr. Thompson then announced that he had "no further questions". Mr. Bailey thus became the plaintiff's only witness who did not harm Mr. Thompson more than he helped.

To declare a mistrial as a sanction for Mr. Thompson's misconduct, then, would have done no more than to give him what he wanted.

The only meaningful sanction that could have been imposed for contempt would have been a dismissal of the case with prejudice. Another district court within this circuit employed that sanction in very similar circumstances. *Botany v. Heeringa*, 521 F.Supp. 1369 (E.D.Wis.1981), *aff'd without opinion*, 723 F.2d 66 (7th Cir. 1983); *see also Redding v. Fairman*, 717 F.2d 1105, 1117 (7th Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984). Imposition of that sanction at that point in the trial, however, would have prevented the case's submission to the jury. Had a reviewing court later concluded that the sanction of dismissal was excessive, *see, e.g., Tyler v. Milwaukee*, 740 F.2d 580 (7th Cir.1984), Mr. Thompson effectively would have achieved the mistrial he sought in the face of a trial going wholly in the defendants' favor.

■ In any event, the court did not conduct summary contempt proceedings at the time of the apparently contumacious behavior and cannot do so now. Still, simple entry of judgment on the verdict would leave Mr. Thompson's conduct without consequence. An attorney, such as Mr. Carmouche, and a jury of citizens have a right to be free from the sort of vituperative profanity unveiled by Mr. Thompson. To do no more than enter the judgment that

---

1. The police reports were admitted into evidence on Mr. Thompson's motion, without objection, as Plaintiff's Exhibit 4.

the defendants earned on the merits would leave those rights unvindicated. Accordingly, the court believes that an order of dismissal with prejudice should accompany the jury's verdict.

The law recognizes several bases other than contempt of court for dismissal of a civil action with prejudice. *See, e.g., LeBeau v. Taco Bell, Inc.,* 892 F.2d 605 (7th Cir.1989) (Fed.R.Civ.P. 41(b); failure to prosecute); *Daniels v. Brennan,* 887 F.2d 783 (7th Cir.1989) (inherent power, failure to prosecute); *Roland v. Salem Contract Carriers, Inc.,* 811 F.2d 1175, 1179–1180 (7th Cir.1987) (Fed.R.Civ.P. 37(b)(2)); *Murray v. Dominick Corp. of Canada, Ltd.,* 117 F.R.D. 512 (S.D.N.Y.1987) (Fed.R.Civ.P. 11); *see also* Fed.R.Civ.P. 16(f). Pertinent to Mr. Thompson's behavior are the district court's inherent power to manage its own affairs so as to achieve the orderly disposition of cases, *Link v. Wabash Railroad,* 370 U.S. 626, 630–631, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962); *Schilling v. Walworth County Park & Planning Com'n,* 805 F.2d 272, 275 (7th Cir.1986); *see also Magnus Electronics v. Masco Corp. of Indiana,* 871 F.2d 626, 632–633 (7th Cir.1989), and Federal Rule of Civil Procedure 41(b), which authorizes dismissal for failure to comply with a court's order. The harsh sanction of dismissal with prejudice should be employed only in extreme situations, such as in the face of a clear record of delay or contumacious conduct or when less drastic sanctions have failed. *Brown v. Frey,* 806 F.2d 801 (8th Cir.1986); *Webber v. Eye Corp.,* 721 F.2d 1067 (7th Cir.1983).

The court's research has disclosed no case in which a post-verdict dismissal with prejudice was ordered against an unsuccessful plaintiff. In *Poulis v. State Farm Fire and Casualty Co.,* 747 F.2d 863, 868 (3rd Cir.1984), however, a case quite unlike this one, the court set forth a series of factors to evaluate in deciding whether to dismiss with prejudice:

(1) the extent of the *party's* personal *responsibility;* (2) the *prejudice* to the adversary . . .; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith;* (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions;* and (6) the *meritoriousness* of the claim or defense.

Analysis of those factors indicates that this case presents one of the extreme situations in which the harsh sanction is appropriate:

(1) Mr. Thompson is personally responsible for the conduct. He had no counsel to whom responsibility could be attributed in any event. The court had requested three separate attorneys to represent Mr. Thompson during the pendency of this litigation pursuant to 28 U.S.C. § 1915(d). *See Mallard v. U.S. District Court,* — U.S. —, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989). Upon the third attorney's motion to withdraw, the court denied Mr. Thompson's request for further action under that provision, and Mr. Thompson represented himself from that point forward. The decision to disregard the court's order to cease his commentary was Mr. Thompson's alone.

(2) The defense received a favorable verdict, so it would be difficult to conclude that the defendants were prejudiced by Mr. Thompson's behavior. Nonetheless, one cannot deliver as effective a closing argument over an adversary's loud cursing.

(3) Mr. Thompson's disruptive conduct has a history that predates his outburst during closing argument. This trial originally was scheduled to begin on December 4, 1989. On that date, three juries were to be selected for the trials of three prisoner civil rights cases [2], of which Mr. Thompson's was to be the first to be tried. Mr. Thompson requested a continuance that morning to allow him to procure the attendance of an absent witness

---

**2.** Among the plaintiffs scheduled for trial that week (all of whom were in court for jury selection on the morning of December 4) was Anthony Bernard Jones, who had a claim against the City of Gary. It might be coincidental that

when pressed at trial to identify the driver of the car in which he claimed to have been injured, Mr. Thompson eventually testified that "Anthony Jones" was the driver.

whose presence had not been requested through the court. The court initially denied the twelfth-hour continuance motion, but reconsidered when Mr. Thompson began a commentary not unlike that which eventually occurred at trial. Concluding that it was better to let Mr. Thompson cool off than to require him to participate in jury selection that morning, the court granted the continuance. The desired witness did not appear at the April 30, 1990 trial.

(4) Mr. Thompson's disregard of the court's order must be deemed willful. In light of his earlier request for a mistrial, an objective analysis indicates that the outburst also was in bad faith.

(5) Alternative sanctions were discussed above; no lesser sanction would suffice to demarcate Mr. Thompson's conduct as outside the range of permissible courtroom behavior even for a *pro se* litigant. It might appear that lesser sanctions already have been imposed by Mr. Thompson's removal from the courtroom and the loss of his concluding final argument. In a sense, those events cannot be considered sanctions, much less adequate sanctions. Mr. Thompson agreed to his removal by continuing his commentary after being told he would have to stop to stay; indeed, he virtually walked out of court prior to the return of the jury's verdict. Further, during the instructions conference, Mr. Thompson informed the court that he did not want to make a final argument. Taking away a right he did not want and which he chose to surrender cannot be deemed an adequate sanction for his conduct.

(6) The jury's verdict addresses the meritoriousness of Mr. Thompson's claim. Because sanction is an issue for the court rather than jury, however, the court must draw its own conclusion. It is sufficient to state that the court fully agrees with the jury's verdict.

The record before the court admits of two interpretations. Mr. Thompson may have seen the case slipping away to a certain defense verdict and acted as he did to goad the court into the mistrial earlier denied him, in the hope that a sympathetic appellate panel might afford him a retrial with brighter prospects. Alternatively (and more probably), he may simply have lost control of his temper and fallen several fathoms below the level of behavior acceptable in a court of law. In either event, his conduct was intolerable. Simple entry of judgment on the verdict would provide no sanction; the absence of sanction would connote approval.

Accordingly, the court concludes that judgment should be entered for the defendant on alternate grounds of the jury's verdict and Mr. Thompson's courtroom behavior. The court does not take this step lightly. Perhaps the defendants, already having had their attorney subject to a scurrilous verbal attack during trial, should not be presented with another potential issue to defend in the event of appeal. Nonetheless, Mr. Thompson's courtroom conduct must be addressed, and any reviewing court should be made aware of this court's belief that alternate grounds exist for the defendants' judgment.

The court recognizes that *pro se* litigants generally must be warned of the potential consequences of their actions or inaction, *see Kelley v. McGinnis*, 899 F.2d 612 (7th Cir.1990); *Palmer v. Decatur*, 814 F.2d 426 (7th Cir.1987), and Mr. Thompson was not informed that his conduct might result in dismissal with prejudice. Nonetheless, he was warned that continuing his verbal barrage would have adverse consequences and he was ordered to cease. It is inconceivable that even an unwarned *pro se* litigant would think it permissible to curse his adversary's attorney in open court. Under the unique circumstances of this case, no further warning was required.

For the reasons stated above, the court orders that judgment be entered for the defendants on the alternative grounds of the jury's verdict and the court's authority under Rule 41(b) and its inherent powers to dismiss the cause with prejudice.

SO ORDERED.