The MANHATTAN LIFE INSURANCE COMPANY, Plaintiff,

v.

A.J. STRATTON SYNDICATE (NO. 782), as Lead Underwriter on Contract # PT4699/82 and Lloyd's London Syndicate on Contract # PT4699/82, Defendants and Third–Party Plaintiffs,

v.

ZIMMERMAN, GREEN INCORPORATED, George G. Zimmerman & Co., and George G. Zimmerman, Third–Party Defendants and Fourth–Party Plaintiffs,

v.

Daniel FETTROLL and Joseph Hadley Limited, Fourth–Party Defendants.

No. 88 Civ. 7640 (RLC).

United States District Court, S.D. New York.

July 18, 1990.

Stroock & Stroock & Lavan, New York City (Alvin K. Hellerstein, Michele L. Jacobson, of counsel), for plaintiff.

Mound, Cotton & Wollan, New York City (Mitchell S. King, Andrew Maneval, Karen M. Cooke, of counsel), for defendants.

## OPINION

ROBERT L. CARTER, District Judge.

Defendants A.J. Stratton Syndicate (No. 782) and Lloyd's London Syndicate (together, the "Syndicates") move pursuant to Rule 15(a), F.R.Civ.P., for leave to file an amended answer, counterclaims and jury demand in which they add two counterclaims for rescission based on the alleged misrepresentation and fraud of plaintiff The Manhattan Life Insurance Company ("Manhattan Life"). Manhattan Life opposes the motion and moves for sanctions under Rule 11, F.R.Civ.P., and for fees and costs relating to the motion.

### I.

The facts of this case have been set out in a previous opinion, *The Manhattan Life Insurance Co. v. A.J. Stratton Syndicate, et al.*, 731 F.Supp. 587 (S.D.N.Y.1990) (Carter, J.), familiarity with which is presumed, but will be briefly recounted here to aid in an understanding of the instant determination.

This case arises out of disagreements between the parties and their agents concerning a reinsurance contract. In March, 1982, Zimmerman, Green, Inc. ("Zimmerman–Green"), a New Jersey insurance brokerage firm, was retained by Manhattan Life, a New York insurance company, for the purpose of soliciting quotes for the reinsurance of accidental death and dismemberment life insurance contracts issued by Manhattan Life. Zimmerman–Green then retained Joseph Hadley Ltd. in London to obtain a quote from the Syndicates. Daniel Fettroll, now a fourth-party defendant, negotiated the contract for Hadley and was primarily responsible for representing Zimmerman–Green.

After negotiations, done in large part by Zimmerman–Green and Hadley, through Fettroll, Manhattan Life and the Syndicates entered into a "losses occurring" policy for reinsurance,[1] and, subsequently, Manhattan Life sought recovery under the reinsurance contract for a claim of some $1.6 million.[2] The Syndicates denied coverage, claiming that prior to the date of the reinsurance contract Manhattan Life received notice of the $1.6 million claim, and, had this been made known to them, they would not have reinsured on a losses occurring basis.

Following the Syndicates' denial of payment, Manhattan Life commenced this action on October 21, 1988, and the Syndicates served their answer and counterclaims on January 23, 1989. Since January, 1989, the Syndicates have impleaded third-party defendant Zimmerman–Green who in turn has impleaded fourth-party defendants Fettroll and Hadley.

Discovery between the Syndicates and Manhattan Life apparently began in January, 1989. The Syndicates claim that during discovery they uncovered evidence showing that Manhattan Life committed fraud by including policies for multiple employer trust ("MET") insurance in the reinsurance agreement without informing them.

According to the Syndicates, MET insurance is riskier than "true" group life insurance and, on this basis, the Syndicates seek to add two counterclaims. The Syndicates argue that Manhattan Life would suffer no prejudice as a result of the amendment since the additional counterclaims arise from the same transactions which are the subject of this lawsuit. Furthermore they argue that this amendment would not cause undue delay because this action is still in the discovery stage.

Manhattan Life opposes the amendment and argues that the motion should be denied because it is dilatory and the amendment would result in substantial prejudice to it. Specifically, Manhattan Life charges that the Syndicates knew by 1984, at the latest, of this allegedly new information. Manhattan Life also argues that the coun-

---

1. A "losses occurring" policy provides coverage for losses occurring on or after a certain date on policies then in effect and thereafter coming into effect.

2. *See Davis v. Manhattan Life*, 743 S.W.2d 835 (Ky.1987), for details regarding the claim.

terclaims sought to be added are meritless and time barred.

## II.

▉ Although as a general rule leave to amend should be freely given, it should not be granted if it would be futile or if there has been undue delay. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *See also* Rule 15(a), F.R.Civ.P. The Syndicates' motion to amend must be denied for both these reasons.[3]

▉ The Syndicates' proposed amendment is premised upon the assertion that MET insurance is different from group life insurance. Paragraph 42 of the proposed counterclaims states:

[multiple employer trust] business is a type of insurance which does not receive the benefit and scrutiny of underwriting and exposes insurers to a greater risk. At the time this Agreement was negotiated it was understood within the insurance industry that [multiple employer trust] business was not true 'group' insurance.

The Syndicates have provided affidavits stating that they were told that the insurance was "strictly group" and were never told that the group risks included MET insurance.

In response, Manhattan Life acknowledges that MET insurance policies were included under the reinsurance agreement but argues that MET insurance policies are considered to be group life insurance. In support of this proposition, Manhattan Life has provided detailed affidavits explaining MET insurance.

The first affidavit, sworn to by Donald Koonjy, former Second Vice President—Group Department of Manhattan Life, provides detailed information about the Affiliated Employers Group Life Insurance Trust Fund (the "AEGLI Trust"), the MET insurance policy in issue. The AEGLI Trust was formed in April, 1972, by the Industrial National Bank of Rhode Island, as Trustee, and a group policy was issued to the Trustee by Manhattan Life. Prior to the AEGLI Trust, Manhattan Life, in conformity with New York law, could only issue group life insurance policies to employers with 10 or more employees. Under the AEGLI Trust, however, it was possible for employers with fewer than 10 employees to obtain group life insurance at an established premium rate.

Since 1972, 95% of the group insurance contracts written by Manhattan Life have been written under the AEGLI Trust, which includes both employer groups having fewer than 10 employees and employer groups having more than 10 employees. Manhattan Life's underwriting guidelines are identical for both single employer group insurance and AEGLI Trust group insurance for companies having ten or more employees. Companies with fewer than 10 employees may only obtain insurance through the AEGLI Trust and the policies are subject to more stringent underwriting criteria.

Another affidavit provided by Manhattan Life, sworn to by Nathaniel B. Taft, an expert in the field of insurance not employed by any party to this case, confirms that MET insurance is considered to be group insurance. The affidavit explains that the industry practice is to require at least the same amount of underwriting for groups insured under METs as for single employer groups, and often to require more stringent underwriting guidelines.

In contrast to the detailed information provided by Manhattan Life, the Syndicates have submitted affidavits of the most conclusory nature. The first, sworn to by

---

**3.** Manhattan Life also argues that the Syndicates' proposed counterclaims are barred by the statute of limitations. However, even if the Syndicates' counterclaims were not timely when Manhattan Life filed its complaint, under New York law, which the court must follow in determining statute of limitations questions, *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941), the Syndicates may nevertheless assert their counterclaims as an offset to reduce or defeat Manhattan Life's ultimate judgment since they arise out of the same group of transactions as Manhattan Life's claim. *See* N.Y. CPLR § 203(c).

Albert John Stratton, the lead underwriter on the contract in question, states:

> In my opinion MET business is not strictly group life insurance and does not receive the benefit and strict scrutiny of group life insurance from an underwriting standpoint.

The second, sworn to by Alan G. Miller, an attorney for the Syndicates, states:

> It is my informed belief that MET business is not strictly group insurance and does not receive the benefit and strict scrutiny of group life insurance.

No other information regarding Manhattan Life or MET insurance is presented by the Syndicates.

The Syndicates' submissions are inadequate to show that there is an issue regarding the status of MET insurance.[4] In light of the information presented by Manhattan Life, it is difficult to understand the Syndicates' conclusory and unsupported position. Manhattan Life has shown that MET insurance is a recognized form of group life insurance which should be no riskier than other types of group life insurance. If anything, the small employee groups insured under the AEGLI Trust should be a better risk because of the more detailed investigation of each person being insured. Accordingly, the motion to amend must be denied.

■ Even if it was not the case that MET insurance is group insurance, the Syndicates' motion must still be denied because of the extensive delay. Documentary evidence shows that the Syndicates and their counsel were aware in 1984 at the latest that Manhattan Life wrote group life insurance through a MET. First, a letter dated February 17, 1984, to the Syndicates from their counsel references a provision of Manhattan Life's MET as being relevant to the $1.6 million claim on which the Syndicates were denying payment. Additionally, the Syndicates retained Norman Reitman Company, Inc. to audit the reinsurance agreement in 1984, an event which surely would have disclosed this information. Finally, Manhattan Life's assertion that the Syndicates did in fact know that MET insurance was included in the reinsurance agreement is supported by the fact that the Syndicates specifically requested documents concerning the MET insurance before any other discovery had been done in the case. It is difficult to understand how the Syndicates could have been so specific if they really knew nothing of the MET insurance.

### III.

■ Having found that the Syndicates' motion to amend must be denied, it is necessary to consider Manhattan Life's motion for Rule 11 sanctions and attorneys' fees and costs associated with this motion.

Under Rule 11, "sanctions shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Eastway Constr. Corp. v. New York*, 762 F.2d 243, 254 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).[5]

---

**4.** In determining whether the Syndicates have shown a genuine new issue to exist, thereby requiring amendment of the pleadings, it is useful to consider the showing required for the existence of a factual dispute in a summary judgment motion. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis original). A dispute is genuine "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Id.* A party opposing summary judgment must show facts sufficient to enable a reasonable mind to conclude that a material dispute of fact exists. *Id.* at 250–51, 106 S.Ct. at 2511. A similar standard is appropriate in this case.

**5.** Rule 11 states in pertinent part:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge,

The conduct of counsel being judged is measured by an objective standard of reasonableness under the circumstances and subjective good faith is not a safe harbor. *Eastway Constr. Corp. v. New York, supra,* 762 F.2d at 253. While "[c]ourts must strive to avoid the wisdom of hindsight in determining whether a pleading was valid when signed, and any and all doubts must be resolved in favor of the signer," *id.* at 254, if a violation of Rule 11 is found, sanctions must be imposed.

Manhattan Life's Rule 11 motion claims that a competent attorney could not reasonably believe that the Syndicates' motion is well grounded in fact. The essential question in determining whether sanctions are appropriate in this case is whether the Syndicates and/or their counsel had previously been given information that MET insurance was part of the reinsurance agreement. As explained above, it is clear that the Syndicates and their counsel were informed of the MET insurance. It is not necessary to question the representation that the attorneys currently working on the case just recently "discovered" this information, since it certainly is possible that the individuals currently involved in the case just gained personal knowledge of the facts in question. This, however, is beside the point. Reasonable factual research would have shown that this information was within the possession of the Syndicates and known to them at the time the complaint was filed.

Because I find that inadequate factual research was done prior to filing this motion, under Rule 11 I have no choice but to award sanctions. Awarding Manhattan Life its reasonable attorneys' fees and costs will compensate it for having to oppose this unreasonable motion and will adequately sanction the Syndicates. Accordingly, Manhattan Life is to submit to the court a sworn, itemized statement with supporting data regarding attorneys' fees and costs it incurred in opposing this mo-

tion. The Syndicates may file papers in opposition.

IT IS SO ORDERED.

information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation....