**ALLIED GATOR, INC., Plaintiff,**

v.

**NPK CONSTRUCTION EQUIPMENT, INC., Defendant.**

No. 1:95–CV–464.

United States District Court,
N.D. Ohio,
Eastern Division.

Aug. 16, 1996.

Richard L. Byrne, Blynn L. Shideler, Webb, Ziesenheim, Bruening, Logsdon, Orkin & Hanson, Pittsburgh, PA, Charles E. Dunlap, Youngstown, OH, for plaintiff.

Thomas J. Collin, Suzanne Bretz Blum, Thompson, Hine & Flory, Cleveland, OH, Robert V. Vickers, Vickers, Daniels & Young Cleveland, OH, for defendant.

### MEMORANDUM & ORDER

O'MALLEY, District Judge.

Plaintiff, Allied Gator, Inc., ("Allied") brings this single count claim of patent infringement against its competitor, NPK Construction Equipment, Inc., ("NPK"). NPK has filed a Motion to Dismiss under Rule 12(b)(6) or for Summary Judgment under Rule 56(c), arguing that its products do not embody each of the elements of Allied's patent and, hence, do not infringe that patent as a matter of law. (Docket # 5). In addition to the initial briefing regarding the merits of Allied's claim, both parties have provided supplemental briefing regarding the effect of the Supreme Court's recent decision in *Markman v. Westview Instruments, Inc.,* — U.S. —, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). For all of the reasons set forth below, NPK's motion to dismiss or for summary judgment is **DENIED.**

### Factual Background

The technology involved in this case is construction shears. On June 9, 1987, patent number 4,670,983 was issued for construction shears invented by Michael and John Ramun. The Ramun patent was assigned to Allied.

The Ramun shears are mounted to a backhoe for use in construction projects that require the handling of large pieces of metal, such as "I–beams," automobile frames, and railroad cars. The shears are designed to pick up, move, and cut these metal pieces into scrap.

The shears are composed of a "fixed blade" and a "movable blade." The fixed blade has parallel beams with a gap between them, into which the movable blade fits when the shears are in a "closed" position. The movable blade is hook-shaped and pivots off of the fixed blade to effectuate the shearing action. The movable blade has three "cutting edge portions": the "first cutting edge portion" is identified with the number 39 on Fig. 1, which is attached to this opinion as Exhibit A; the "second cutting edge portion" is identified with the number 38 on Fig. 1; the "third cutting edge portion" is identified with the number 37 on Fig. 1.

NPK markets and sells "NPK Steel Shears", which also can be mounted to a backhoe and also may be used to cut large pieces of metal during construction. In a marketing brochure for NPK's steel shears, the shears are represented to "reduce demolition and scrap processing costs." *See* Exhibit B to this opinion. NPK makes several sizes of these large shears. NPK's shears also consist of a fixed blade and a cutting blade which pivots to effect the shearing of large metal objects.

In its complaint, Allied has alleged that one or more model of NPK steel shears infringe upon Claim 20 of the Ramun patent. Claim 20 describes the design and operation of the fixed and movable blade portions of the Ramun shears. Allied alleges that the identified NPK shears embody Ramun's claimed, patented invention. NPK contends that its shears do not embody each and every attribute of Claim 20, and, accordingly, do not infringe as a matter of law. NPK bases this contention on the fact that, on NPK's reading of it, Claim 20 contemplates a product with three separate cutting edges, spaced consecutively around the arch of the hook-shaped movable blade, which cut the metal object in consecutive cutting planes along the arch. NPK claims none of its models has the third of these cutting planes.

### The Standard of Review

NPK has moved to dismiss the infringement claim against it, or alternatively for summary judgment on the issue of infringement. Both NPK and Allied rely on information and documents outside the pleadings to make their respective arguments. When the parties address matters outside the pleadings to the court on a motion to dismiss, the motion is treated as one for summary judgment under Rule 56, Fed.Civ.Pro.Rule 12(b).

Rule 56(c) of the Federal Rules of Civil Procedure dictates that, where summary judgment is sought:

> The judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

While all evidence must be viewed in the light most favorable to the non-moving party, summary judgment is appropriate whenever that non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "In other words, the movant [can] challenge the opposing party to 'put up or shut up' on a critical issue. After being afforded sufficient time for discovery, as required by Fed.R.Civ.P. 56(f), if the respondent [does] not 'put up', summary judgment [is] proper." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989).

In this context, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street*, at 1479–80 *citing Frito–Lay, Inc, v. Willoughby*, 863 F.2d 1029, 1034 (D.C.Cir.1988). The trial court need not seek out factual disputes nor speculate on the possibility that, under some as yet unstated scenario, a meaningful factual dispute might somehow arise. The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established, which create a genuine issue of material fact. *See Fulson v. City of Columbus*, 801 F.Supp. 1, 4 (S.D.Ohio 1992).

### The Parties' Positions

As noted above, NPK argues that certain aspects of Allied's shear design, as set forth in Claim 20 of the Ramun patent, do not "read on" NPK's shears. In particular, NPK contends that Claim 20 requires the movable blade to have three cutting edges, the third cutting edge being numbered 37 on Fig. 1, and that its products do not have that third edge.

The primary dispute involves the following language in Claim 20:

> "... said hook shaped portion including first, second, and third cutting edge portions, said first and third cutting edge portions of said hook-shaped cutting blade arranged in substantially right angular relation to one another ..."

NPK argues that the claim language, the patent language and the patent history all demonstrate that the "third edge portion" contemplated in Claim 20 is a very defined cutting mechanism which its products do not embody. Allied argues these same sources all indicate that the "third cutting edge portion" contemplated in Claim 20 is the same or legally equivalent to the "tip" of NPK's movable blade. *See* diagram of NPK's blades on second page of Exhibit B. Thus, this Court must determine what the Ramun '983 patent means when it refers to a "third cutting edge portion" and whether it can be said as a matter of law that none of NPK's products embody that element of the Allied patent.

### Legal Analysis

#### A.

There are two aspects to a patent infringement analysis: construing the patent and determining whether infringement occurred. *Markman v. Westview Instruments, Inc.*, —— U.S. —— ———, 116 S.Ct. 1384, 1393, 134 L.Ed.2d 577 (1996). The construction of the patent and the terms contained therein is an issue to be determined by the court as a matter of law. *Id.* at ——, 116 S.Ct. at 1396. To ascertain the meaning of

the claims, the court should consider three things: the patent claims, the patent specification and the prosecution history. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed.Cir.1995), *aff'd,* —— U.S. ——, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The claims must be read in view of the specification, of which they are a part. *Id.* For purposes of construing the claim, the written description contained in the specification may act as a sort of dictionary, which explains the invention and may define the terms used in the claims. *Id.*

The court may also look to the patent's prosecution history if it is a part of the record in the case. *Id.* at 980. "This 'undisputed public record' of proceedings in the Patent and Trademark Office is of primary significance in understanding the claims." *Id.* Although the prosecution history can be used when construing the claims, it cannot enlarge, diminish or vary the limitations in the claims. *Id.*

The court may also consider extrinsic evidence, like expert and inventor testimony, to aid the court in coming to a correct conclusion as to the true meaning of the language employed by the patent. *Id.* The district court is free to use helpful extrinsic evidence and reject other evidence as unhelpful. *Id.* Extrinsic evidence, however, may not be used to vary or contradict the terms of the claims. *Id.* at 981. The district court's claim construction, enlightened by such extrinsic evidence as may be helpful, must still be based upon the patent itself and the prosecution history. *Id.*

### B.

NPK contends that there is no infringement in this case because NPK's movable blade does not have a "third cutting edge" as that term is described in the Ramun '983 patent. As set forth above, this dispute is grounded in the following language from Claim 20 of the Ramun patent: "... said hook shaped portion including first, second, and third cutting edge portions, said

first and third cutting edge portions of said hook-shaped cutting blade arranged in substantially right angular relation to one another ..." Claim 20, column 8 lines 63–67. NPK argues that, because its movable blade has only two cutting edges and "[a]s this third cutting edge is required in Claim 20 and [is] not present in the NPK device described in the complaint, there is no infringement as a matter of law." NPK's Memorandum in Support, page 5.

With respect to the question of what the Ramun patent means when it refers to a "third cutting edge portion," NPK relies first on the claim language. NPK points to the following passage that appears at column 9, lines 19–22 of Claim 20: "... said third cutting edge portion having a sharpened end portion directed generally toward said fixed cutting blade ..." Citing this language, NPK argues that "two separate sharpened surfaces are recited": the "cutting edge" along the *side* of the tip of the movable blade and the sharpened point of the tip of the movable blade. NPK argues that, because the claim requires the "third cutting edge portion" to have these *two* cutting components, and because NPK's shears lack the side "cutting edge", there can be no infringement.[1]

Emphasizing the word "portion" in the phrase, Allied argues that the "third cutting edge portion" refers to the structural, removable piece of the blade which contains a sharpened cutting tip. Allied argues that the same claim language NPK cites defines the "third cutting edge portion" as a replaceable hardened element "having" a sharpened end; that is, that the "sharpened end portion" *is* the same thing as the "third cutting edge portion" and is *not* merely one aspect of it.

In examining the language of the patent itself to determine what the patent means by a "third cutting edge portion", this Court finds the following passages from the "Description of the Preferred Embodiment" to be helpful:

"Still referring to Figs 1, 2, 3 and 4 of the drawings, it will be seen that the movable

---

**1.** NPK does not dispute that at least some of its products embody some form of cutting tip, in addition to two "scissor-like" cutting edges.

blade 23 is generally hook-shaped and has a replaceable hardened **cutting end portion 37** on its free end and first and second hardened **cutting edge portions 38 and 39 ...**" Column 3, lines 19–23 (emphasis supplied);

"As shown in Fig. 1, **cutting end portion 37** and **cutting edge portion 39** are disposed with respect to each other at an angle of approximately 90% ..." Column 3, lines 27–29 (emphasis supplied).

These are the very first descriptions of portion 37, which is the so-called "third-cutting edge portion." It is instructive that the description refers to the "cutting end portion 37" and not the "cutting end portion of 37". Such a description undermines NPK's argument that the "third cutting edge portion" has two cutting components, a cutting edge and a sharpened end.

With this same description in mind, a review of the disputed language, upon which NPK places substantial reliance, is instructive: "... said third cutting edge portion of said hook-shaped movable cutting blade having a sharpened end portion directed generally toward said fixed cutting blade...." Contrary to NPK's argument, this language is more appropriately interpreted to mean that the third cutting edge portion is a structural piece of the movable blade whose end or tip is sharpened, which sharpened tip is directed generally toward the fixed cutting blade. This interpretation is more consistent with the description set forth in the "Description of the Preferred Embodiment."

NPK also relies on the angular relationship represented in Claim 20 and the patent drawings to support its claim that the "third cutting edge portion" designates both the side and the tip of section 37 of Allied's movable blade. The disputed language states: "... said first, second and third cutting edge portions of said hook-shaped cutting blade arranged in substantially right angular relation to one another ..." Referring to Fig. 1 (Exhibit A to this opinion), NPK argues that the only right angular relationship demonstrated in any drawing is "the

three cutting edge portions [ ] one sees when viewing the blade from the side." Reply Brief at p. 1. NPK argues that this right angular relationship is only created with respect to the side edge of 37, and NPK's movable blade has no such side "cutting edge." [2]

Allied responds to this argument by claiming that the right angular relationship referred to in Claim 20 is the angular relationship demonstrated when one views the movable blade from the front or the top. Viewing the blade from the front, Allied argues, one would observe the first cutting edge on a vertical plane, while the third cutting edge, the sharpened end of 37, is on a horizontal plane. Allied points to Fig. 12 of the patent, which demonstrates that the "third cutting edge" of 37 has a thickness that creates a horizontal line when viewed from above. Thus, under Allied's theory, the "tip" or sharpened end of 37 is the "third cutting edge" that is in a right angular relationship with the first cutting edge.

The angular relationship represented by the phrase "... said first, second and third cutting edge portions of said hook-shaped cutting blade arranged in substantially right angular relation to one another ..." is somewhat unclear when read in isolation. Read in light of other language contained in the patent, however, it becomes clear that NPK's position is not supportable.

As set forth above, the "Description of the Preferred Embodiment" also makes reference to the right angular relationship involving the first and third cutting edge: "As shown in Fig. 1, **cutting end portion 37** and **cutting edge portion 39** are disposed with respect to each other at an angle of approximately 90% ..." Column 3, lines 27–29 (emphasis supplied). This "end" / "edge" distinction supports Allied's position. In addition, Fig. 2 of the patent is another *side* view of the movable blade, in which the third and first cutting element pieces are situated at an angle of approximately 80%, not 90%. This reading of the patent suggests that the

---

**2.** In making its argument NPK repeatedly states that Claim 20 mandates that a "third cutting edge" be present. It does not, it contemplates a "third cutting edge *portion.*" This distinction is

important, as described above, and NPK's apparent desire to read the word "portion" out of Claim 20 cannot change that fact.

cutting plane of the "third cutting edge portion" is, in fact, the tip of 37 and not the side of 37.[3]

NPK also points to the prosecution file history to support its position that the NPK shears do not have a third cutting edge, as that term is intended by the Ramun patent. Portions of the Ramun '983 file history have been submitted as an exhibit and are part of the record in this case. NPK focuses on the fact that Allied distinguished its movable blade from the prior art, in particular the construction shears patented by Pardoe, on the ground that Allied's movable blade had three cutting edges, while the prior art demonstrated only two. Referring to the Pardoe patent, NPK argues that the Pardoe movable blade had a tip and, if one accepts Allied's arguments in this litigation, that tip is a third cutting edge. NPK argues that the position taken by Allied in obtaining the patent is, thus, inconsistent with the position taken in this litigation.

Allied responds to this argument by submitting the affidavit of Glenn Sinclair, Ph.D., who opines that: "the blade tip of the Pardoe patent does not include a cutting edge portion in the out of the plane direction or attached to the tip of the movable blade. Figure 1 of the Pardoe patent indicates that the tip has a substantial clearance from the end piece of the lower jaw, and thus, is not designed to effect a cut." Sinclair aff. at para. 13. Indeed, contrary to NPK's assertion in its Memorandum in Support (at page 10), this Court's own reading of the Pardoe patent finds no reference which indicates that the tip of Pardoe's movable blade was sharpened or otherwise designed to effectuate a cut. (*See* Pardoe patent at Exhibit 4 to NPK's Memorandum in Support). Even if the Pardoe patent contemplated some form of sharpened tip, moreover, the fact that it clearly was not embodied in a separate, removable structural piece would still distinguish it from the product specified in Claim 20 of the Ramun '983.

This Court finds, after an examination of the language of the patent and the patent prosecution history, as a matter of law, that the term "third cutting edge portion" as it is used in the Ramun '983 patent is a reference to the removable, structural piece located at the tip of the movable blade, whose end is sharpened for cutting and does not refer to or contemplate a cutting edge on the side of that tip. NPK's motion is premised entirely upon its claim that Allied's patent contemplates a "third cutting edge" running consecutively around a hook-shaped movable blade and operating on the same plane, respectively, with two other cutting edges, a third cutting edge its own products do not employ. Because, this Court rejects NPK's interpretation of the patent upon which Allied's claim is premised, NPK's motion to dismiss or for summary judgment is **DENIED**.

█ As noted, NPK does not dispute that at least some of its products embody a sharpened tip as part of its cutting mechanism. While not a part of the present motion, NPK presumably would dispute that, even as now interpreted by this Court, Allied's patent is infringed by those products. The question of whether one or more of NPK's products infringe the Allied patent, either directly or by virtue of the doctrine of equivalents, "is a question of fact, to be submitted to a jury." *Markman v. Westview Instruments, Inc.,* —— U.S. ——–——, 116 S.Ct. 1384, 1393, 134 L.Ed.2d 577 (1996). Accordingly, the parties are directed to attend a status conference in this matter on **September 4, 1996 at 2:00 p.m.** for purposes of setting a trial date and determining what needs to occur to render this matter trial ready.

**IT IS SO ORDERED.**

---

3. Indeed, if one reads the references in Claim 20 to cutting edges as references to "cutting edge *portions,*" even under NPK's own calculations, those *portions* could be read to sit at the angles specified, regardless of where the cutting mechanism is located.