DRAPER AND KRAMER, INCORPORATED, an Illinois corporation, and LaSalle National Bank, as Trustee under Trust No. 104086 dated June 15, 1981, Plaintiffs,

v.

BASKIN–ROBBINS, INC., a foreign corporation, Defendant.

BASKIN–ROBBINS, INC., a foreign corporation, Counterplaintiff,

v.

DRAPER AND KRAMER, INCORPORATED, an Illinois corporation, Counterdefendant.

No. 86 C 4368.

United States District Court, N.D. Illinois, E.D.

Aug. 10, 1988.

Kathy P. Saxton, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for plaintiffs.

Michael R. Levinson, Mark A. Orloff, Alexander, Unikel, Zalewa & Tenenbaum, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

What are soda fountain items? Defendant says, "sodas, sundaes, and cones." Plaintiffs say, "ice cream sodas, ice cream sundaes, and ice cream cones." (The court thinks of chickens, but more on that later.)

## FACTS

Defendant Baskin–Robbins, Inc. ("Baskin–Robbins") sells "31 flavors" of hard ice cream. On December 31, 1979, Baskin–Robbins leased commercial property in the Brettwood Village Shopping Center ("Brettwood") in Decatur, Illinois, from L.E.G., Inc. ("L.E.G.") "for the purpose of use as a store for the sale, at retail, of ice cream, ice milk, sherbet, soda fountain items, foods, soft drinks, candy, confectionary products and similar or related goods for consumption on and off the premises." The L.E.G./Baskin–Robbins lease ("the 31 Flavors Lease") contained an exclusive use provision:

> Lessor hereby agrees and covenants that no other premises of the building, or group of the buildings, owned or controlled by Lessor, of which the leased premises are a part, shall be leased or used for the business of selling "hand packed ice cream," ice cream cones, or soda fountain items. It is the specific understanding of the parties hereto that Lessee shall have the exclusive right to sell "hand-packed ice cream," ice cream cones, or soda fountain items in the building, or group of adjoining buildings, owned or otherwise controlled by Lessor, except that this restriction shall not apply to co-tenants who have executed leases prior to February 28, 1968.

At the time the parties executed the 31 Flavors Lease, a Dairy Queen, Inc. ("Dairy Queen") had been leasing a store at Brettwood since early 1968. Dairy Queen sells soft ice cream, ice cream cones and soda fountain items. Baskin–Robbins never objected that the Dairy Queen violated the exclusive use provision of the 31 Flavors Lease.

In late 1981, LaSalle National Bank ("LaSalle"), as Trustee under Trust No. 104086, dated June 15, 1981, succeeded L.E.G. as landlord at Brettwood. LaSalle subsequently engaged Draper & Kramer to manage its property.

In February, 1986, LaSalle and Draper and Kramer (collectively "LaSalle") entered into a commercial lease with the S.J. Burns Company, Inc. ("S.J. Burns") for the operation of a retail yogurt store at Brettwood to be called The Country's Best Yogurt ("TCBY").

In March, attorneys for Baskin–Robbins and LaSalle exchanged correspondence regarding LaSalle's lease with S.J. Burns. Baskin–Robbins asserted that because TCBY would sell soda fountain items it would violate the exclusive use provision of the 31 Flavors Lease. LaSalle conceded that TCBY would offer soda fountain items, but opined that these soda fountain items would not violate the 31 Flavors Lease because Baskin–Robbins' "protection is limited to those [soda fountain items] made with ice cream." Baskin–Robbins continued to object to TCBY, and did not change its position when LaSalle sought and obtained from S.J. Burns an amendment to its lease providing that TCBY

"shall not sell soda fountain items or carbonated beverages made with ice cream."

In May, 1986, LaSalle filed suit in the Circuit Court of Cook County, Illinois, *Draper & Kramer v. Baskin–Robbins, Inc.*, 86 CH 4645, seeking both a declaratory judgment that TCBY's lease did not violate the 31 Flavors Lease and reasonable attorneys fees. Baskin–Robbins removed to this court, invoking the court's removal and diversity jurisdiction. 28 U.S.C. § 1441; 28 U.S.C. § 1332(a)(1). Baskin–Robbins then counterclaimed for declaratory and compensatory relief, and reasonable attorneys fees, arising out of LaSalle's alleged breach of the exclusive use provision of the 31 Flavors Lease.

After replying to the counterclaim, LaSalle moved for judgment on the pleadings. Baskin–Robbins, in turn, moved for partial summary judgment on the issue of liability. The parties agree that there remain no genuine issues of material fact and that this court can construe the 31 Flavors Lease as a matter of law. (*See Mazanek v. Rockford Drop Forge Co.*, 98 Ill.App.3d 956, 957, 54 Ill.Dec. 368, 424 N.E.2d 1271 (1981); *Chicago Investment Corp. v. Dolins*, 93 Ill.App.3d 971, 974, 49 Ill.Dec. 415, 418 N.E.2d 59 (1981).) For the reasons set forth below, this court will deny LaSalle's motion for judgment on the pleadings and grant Baskin–Robbins' motion for partial summary judgment.

## DISCUSSION

In the oft-cited case *Frigaliment Importing Co., Inc. v. B.N.S. International Sales Corp.*, Judge Friendly began:

> The issue is, what is a chicken? Plaintiff says "chicken" means a young chicken, suitable for baking and frying. Defendant says "chicken" means any bird of that genus that meets certain specifications on weight and quality, including what it calls stewing chicken and plaintiff perjoratively calls "fowl." Dictionaries give both meanings, as well as some others not relevant here. To support its, plaintiff sends a number of volleys over the net; defendant essays to return them and adds a few serves of its own. Assuming that both parties were acting in good faith, the case nicely illustrates Holmes' remark that "the making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs—not on the parties having *meant* the same thing, but on their having *said* the same thing." The Path of the Law, in Collected Legal Papers, p. 178. I have concluded that plaintiff has not sustained its burden of persuasion that the contract used "chicken" in the narrower sense.

190 F.Supp. 116, 117 (S.D.N.Y.1960).

The issue here is, what are soda fountain items? LaSalle says that, at least with respect to the 31 Flavors Lease, soda fountain items are frozen desserts such as sundaes, sodas and cones made with ice cream. Baskin–Robbins agrees that soda fountain items include sodas, sundaes and cones, but insists that they need not be made with ice cream. To Baskin–Robbins, sodas, sundaes and cones made with yogurt are just as much soda fountain items as are ice cream sodas, sundaes and cones, so when TCBY sells yogurt sodas, sundaes and cones it falls within the exclusive use provision of the 31 Flavors Lease.

Although in Illinois restrictive convenants must be narrowly construed, *Gatton v. Page*, 44 Ill.App.3d 559, 3 Ill.Dec. 287, 358 N.E.2d 685 (1976), and though the parties *could* have contracted to protect Baskin–Robbins against competition only from other ice cream stores, this court must construe the 31 Flavors Lease on the basis of the words it contains and the circumstances surrounding its execution. *See Vigilante v. National Bank of Austin*, 106 Ill.App.3d 820, 62 Ill.Dec. 626, 436 N.E.2d 652 (1982); *Chicago Investment Corp. v. Dolins*, 93 Ill.App.3d at 975. The lease says " 'hand-packed ice cream,' ice cream cones, *or* soda fountain items." (Emphasis added.) Like the contract in Judge Friendly's case, it does not limit the meaning of the operative term, and this court finds nothing in the parties' agreement which requires such limitation. A soda fountain is a soda fountain. It makes ice cream

banana splits, yogurt banana splits, ice cream soda, yogurt sodas, cherry cokes, vanilla cokes, chocolate cokes, and all the varieties of carbonated drinks which are essentially found in soda fountains. Soda fountain items are soda fountain items, not soda fountain items made with ice cream. LaSalle's efforts to prove otherwise are not in good taste.

LaSalle first argues that the 31 Flavors Lease specifically uses the adjective "hard" to differentiate between Baskin–Robbins' ice cream and other ice cream and related products. This would be a delicious argument, if only the lease actually used that term. In fact, the lease says nothing whatever about "hard" ice cream; it refers to *"hand-packed* ice cream" to describe a form in which the ice cream may be sold—i.e., in containers. Either LaSalle cannot read, or it does not think that this court can. An "n" is not an "r", and LaSalle's effort to make it one demonstrates either neglect, bad faith or an overdose of sweets.

LaSalle next points to the grandfather clause in the exclusive use provision—the provision "shall not apply to co-tenants who have executed leases prior to Febuary 28, 1968"—as demonstrating that the 31 Flavors Lease does distinguish between the "hard" ice cream Baskin–Robbins sells and the "soft" ice cream offered by Dairy Queen. This argument offends logic. If Dairy Queen's soda fountain items made with soft ice cream did not violate the 31 Flavors Lease, then the grandfather clause would not have been necessary. The inclusion of the clause supports Baskin–Robbins' position that any soda fountain items—those made with hard ice cream and those made with other frozen cream products—fall within the proscription of the exclusive use provision.

LaSalle further argues that caselaw and dictionaries establish a difference between ice cream and yogurt. The court agrees that these products differ, but fails to see how the difference bears on this case. The exclusive use provision protects Baskin–Robbins not merely from stores selling ice cream, but from any operation competing with it—that is, retail stores offering "hand-packed ice cream," ice cream cones, or soda fountain items. TCBY sells ice cream cones and soda fountain items, and nothing in LaSalle's argument suggests that it will not compete with Baskin–Robbins.

Finally, LaSalle notes that five other operations at Brettwood—four restaurants and a donut shop—sell ice cream and other soda fountain items, yet Baskin–Robbins has never asserted that they violate the 31 Flavors Lease. Again, this court fails to see the point of LaSalle's argument. Whether Baskin–Robbins chose not to object to these operations because of the lease's reference to "premises ... used *for the business* of selling 'hand-packed ice cream,' ice cream cones, or soda fountain items," or instead because it generously opted to avoid unnecessary confrontations, is irrelevant: Its position on these co-tenants has no impact whatever on its right to invoke the exclusive use provision against TCBY.

Indeed, this court feels compelled to note the irony in LaSalle's effort to use Baskin–Robbins' non-objections against it. In LaSalle's brief opposing Baskin–Robbins' summary judgment motion, LaSalle attacked Baskin–Robbins' reference to LaSalle's amendment of its lease with S.J. Burns. Baskin–Robbins had argued that the amendment demonstrates LaSalle's understanding of the difference between "soda fountain items" and "soda fountain items made with ice cream." LaSalle responded sharply that, whatever the amendment might mean, it has nothing whatever to do with the proper construction of the 31 Flavors Lease. Then, three pages later, LaSalle presented its argument that Baskin–Robbins' failure to object to LaSalle's lease with five other co-tenants informs the construction of the 31 Flavors Lease. The court is reminded of the pot calling the kettle black.

■ Although LaSalle's arguments are at an end, this court's ruling unfortunately is not. In the process of contesting Baskin–Robbins' construction of the 31 Flavors Lease, LaSalle employed a litigation tactic that has become all too familiar in recent

years: It accused Baskin–Robbins of violating Rule 11. That was a mistake. The adversary system's reliance on zealous advocacy entitled LaSalle's attorneys to vigorously assert LaSalle's strained interpretation of the lease. It did not, however, permit the attorneys to accuse opposing counsel of violating their professional responsibilities.

That LaSalle did not separately move for Rule 11 sanctions, but instead invoked the rule as part of its argument on the merits, makes no difference. This court appreciates that attorneys involved in heated litigation often employ rhetoric stronger than necessary, and the court can tolerate arguments harsher in tone than appropriate. This tolerance ends, however, when arguments turn into accusations of professional misconduct.

Rule 11 is not a toy. A lawyer who transgresses the rule abuses the special role our legal system has entrusted to him. *E.g., Dreis & Krump Mfg. Co. v. International Association of Machinists and Aerospace Workers,* 802 F.2d 247, 255 (7th Cir.1986). He can suffer severe financial sanctions and, if his misconduct persists, he can find himself before a disciplinary commission. *See, e.g.,* Model Rule of Professional Responsibility 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous."). In short, a Rule 11 violation is a serious thing, and an accusation of such wrongdoing is equally serious.

An unjustly accused attorney who argues a losing position may seek to demonstrate that, although his argument was unsuccessful, his opponents' Rule 11 accusation was frivolous. *See Local 106 v. Homewood Memorial Gardens, Inc.,* 838 F.2d 958 (7th Cir.1988). When the accused attorney actually prevails on his underlying position, his effort to turn the tables on his accuser has particular strength. It will be a rare case indeed in which such an attorney cannot successfully show that the accu-

sation lacked a reasonable basis in fact and law.

Rule 11 forces lawyers to think twice before filing; this mandate applies with equal force when the filing includes a Rule 11 claim. LaSalle's attorneys did not think twice, and they must pay for their error.

Ordinarily, before this court would impose Rule 11 sanctions sua sponte, it would request briefs from counsel on whether sanctions were warranted. In this case, however, such additional briefing would only add to the sanctioned lawyers' costs. Nothing LaSalle's counsel could possibly say could persuade this court that the accusations against Baskin–Robbins' attorneys were reasonably based in law or fact. Accordingly, this court will impose Rule 11 sanctions against LaSalle's attorneys at this time.

The amount of the sanction presents another problem. Because the 31 Flavors Lease expressly allows Baskin–Robbins to recover its (reasonable) attorneys fees in this litigation, Rule 11 will not serve as a cost-shifting sanction here. Instead, this court will order LaSalle's [1] attorneys to pay to the court $500 as a mild but hopefully instructive penalty for frivolously accusing Baskin–Robbins' counsel of violating the rule.

## CONCLUSION

Plaintiffs' motion for judgment on the pleadings is denied. Defendant's motion for partial summary judgment on the issue of liability is granted. The court enters Rule 11 sanctions sua sponte against plaintiffs' counsel. The sanctioned lawyers shall tender $500 to the court at their next appearance.

---

1. As noted earlier, this court has referred to plaintiffs LaSalle and Draper and Kramer collectively as LaSalle. The Rule 11 sanction here shall apply to the lawyers for both plaintiffs.