**SAFE–STRAP COMPANY, INC., Plaintiff,**

v.

**KOALA CORPORATION, Defendant.**

**No. 02 Civ. 7057(WK).**

United States District Court, S.D. New York.

July 3, 2003.

408

Louis C. Dujmich, Alfred R. Fabricant, Douglas Q. Hahn, Ostrolenk, Faber, Gerb & Soffen, LLP, New York City, for Plaintiff.

Bill Vaslas, Todd C. Vitolo, Vaslas, Lepowsky, Hauss & Danke, LLP, Staten Island, NY, Robert R. Brunelli, Benjamin B.

Lieb, Sheridan Ross P.C., Denver, CO, for Defendant.

## OPINION AND ORDER

WHITMAN KNAPP, Senior District Judge.

In this patent infringement action, Plaintiff Safe–Strap Company, Inc. ("Plaintiff" or "Safe–Strap") alleges that Defendant Koala Corporation ("Defendant" or "Koala") violated the Patent Act, 35 U.S.C. § 101 *et seq.* Koala, however, contends that Safe–Strap's lawsuit is frivolous and argues that the allegations in Safe–Strap's Complaint lack evidentiary support. Accordingly, Koala now moves this Court to sanction Safe–Strap and its attorneys pursuant to Rule 11 of the Federal Rules of Civil Procedure.

## BACKGROUND

Safe–Strap manufactures child restraint systems which are sold throughout the United States. (Compl. ¶ 7.) Among such products, Safe–Strap manufactures and markets, *inter alia,* child seatbelts which are used to secure and to protect children while they are riding in shopping carts commonly used by grocery stores. (*Id.*)

On August 15, 2000, the United States Patent and Trademark Office issued U.S. Patent No. 6,101,687 (" '687 Patent"), entitled "Child Seatbelt Assembly," to Paul F. Giampavolo ("Giampavolo")[1] and John S. Pontaoe (collectively the "patentees"). (*See* Compl. ¶ 8; *see also* Compl., Ex. 1.) The entire right, title, and interest to the '687 Patent was assigned to Safe–Strap. (Compl. ¶ 8; *see also* Compl., Ex. 1 (listing Safe–Strap as the assignee).) To date, Safe–Strap continues to manufacture and to distribute the Child Seatbelt Assembly under the '687 Patent. (Compl. ¶ 9.)

Safe–Strap contends that Koala infringed and continues to infringe the '687 Patent "by making, using, selling and offering to sell a Child Seatbelt Assembly that infringes the '687 Patent." (Compl.¶ 10.) In 1998, Koala apparently acquired the assets of Smart Products Corporation. (Giampavolo Decl. ¶ 3.) Among those assets were safety belts sold under the name "SmartStrap ™." (*See* Giampavolo Decl. ¶¶ 1, 3; *see also* Giampavolo Decl., Ex. 1.) Thereafter, the Defendant continued to sell and to distribute safety belts "of the same design" as that product. (Giampavolo Decl. ¶ 3.) In 2000, Koala purportedly altered the manufacturing process by which it made the SmartStrap ™ safety belts in such a manner that the modified belts infringed Safe–Strap's '687 Patent. (*See* Giampavolo Decl. ¶¶ 9, 11.) According to Safe–Strap, Koala now sells these "infringing" SmartStrap ™ belts through its "Smart Products" division. (*See* Compl. ¶¶ 11–12.) Koala allegedly maintains a "vast stockpile" of such infringing products, has offered to sell them to Safe–Strap, and intends to sell them to Safe–Strap's current and future customers. (Compl. ¶ 13.)

As a consequence, Safe–Strap initiated this patent infringement action on September 5, 2002. The Plaintiff contends that Koala "infringed, contributorily infringed and/or induced others to infringe" the '687 Patent in violation of 35 U.S.C. §§ 271(a), (b), and (c). (Compl. ¶ 17.) As such, Safe–Strap seeks declaratory and injunctive relief as well as damages.

Koala was served with the Summons and Complaint on September 12, 2002. (*See* Docket No. 3.) Three weeks later, Koala's counsel wrote a letter to Safe–Strap's attorneys in which he explained that the Defendant's safety belts could not have infringed the '687 Patent because the

---

1. Giampavolo is the President of Safe–Strap.

(Giampavolo Decl. ¶ 1.)

SmartStrap™ was "in the prior art" and "one [could not] infringe a patent by practicing the prior art." (Def.'s Mot. for Sanctions, Ex. 2 at 1.) Koala's counsel also opined that "if the claims of the '687 Patent [were] interpreted so broadly as to encompass Koala's Smart Strap product, the '687 Patent would be fully anticipated by at least" one prior patent (namely U.S. Patent No. 5,940,944, U.S. Patent No. 5,920,968, or U.S. Patent No. 5,781,970 (collectively the "Anscher Patents")) and that "the '687 patent would be obvious and not patentable under 35 U.S.C. § 103 in light of any number of combinations of" the Anscher Patents and other prior art. (*Id.* at 2.) Koala therefore called upon Safe–Strap to withdraw the Complaint and enclosed a motion for sanctions which Koala intended to file with the Court if Safe–Strap chose not to do so. (*See id.* at 2–3.)

Safe–Strap's attorneys disagreed with the contentions enumerated in the foregoing letter. They sent Koala's counsel a response in which they explained that Safe–Strap had "a meritorious claim." (Def.'s Mot. for Sanctions, Ex. 3.) They also argued that Koala's counsel had misunderstood the " '687 claimed invention" and suggested that he should further "review the claims and file history of the '687 Patent-in-suit." (*Id.*) Safe–Strap's attorneys therefore informed Koala's counsel that Safe–Strap would not withdraw the Complaint. (*Id.*)

Koala's counsel took advantage of their suggestion and re-examined "the claims and file history of the '687 Patent." (Def.'s Mot. for Sanctions, Ex. 4.) However, this new evaluation only reinforced his previous views about Safe–Strap's case. (*See id.*) As such, on October 8, 2002, Koala's counsel sent Safe–Strap's attorneys a second letter in which he informed them that Koala would move for sanctions if Safe–Strap did not withdraw its Complaint within 21 days. (*Id.*) He also enclosed an amended motion for sanctions with his correspondence. (*See id.*) Safe–Strap chose not to withdraw its Complaint and, on November 5, 2002, Koala moved the Court for sanctions.

## DISCUSSION

### I. Standards For Rule 11 Sanctions

Koala moves the Court to sanction the Plaintiff and its attorneys pursuant to Rule 11 of the Federal Rules of Civil Procedure. Koala contends that they have engaged in conduct which violates Rule 11. As a consequence, Koala seeks "(1) [the] dismissal of this action; and (2)[an] award of attorneys' fees for being needlessly put to the defense of Safe–Strap Company, Inc.'s objectively frivolous infringement charge." (Def.'s Reply in supp. of Sanctions ("Def.'s Reply Br.") at 1; *see also* Def.'s Notice of Mot. at 1 (moving "for an Order, (1) imposing sanctions against Safe–Strap and its attorneys in violation of Fed.R.Civ.P.11, (2) requiring payment of Koala's reasonable attorney's fees and other expenses incurred as a direct result of said violation, (3) dismissing this frivolous action against Koala...."); Def.'s Reply Br. at 10 ("The Complaint should be dismissed as frivolous and Koala awarded fees.").)

"Rule 11 requires an attorney to sign every pleading or other paper filed with the court." *Storey v. Cello Holdings, L.L.C.* (S.D.N.Y.2002) 182 F.Supp.2d 355, 364; *see also* Fed.R.Civ.P. 11(a). When he signs a pleading, the attorney certifies

that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed.R.Civ.P. 11(b); *see also Storey*, 182 F.Supp.2d at 364–365 (quoting *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.* (1991) 498 U.S. 533, 542, 111 S.Ct. 922, 112 L.Ed.2d 1140) ("The signature 'certifies to the court that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive.' ").

■ Accordingly, "[a] pleading, motion or paper violates Rule 11 if it is frivolous, legally unreasonable, or factually without foundation, even though not signed in subjective bad faith." *Wechsler v. Hunt Health Systems, Ltd.* (S.D.N.Y.2002) 216 F.Supp.2d 347, 356. "If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may...impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." Fed.R.Civ.P. 11(c); *see also Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.* (2d Cir.1999) 186 F.3d 157, 166 (citation omitted) ("Once a court determines that Rule 11(b) has been violated, it may in its discretion impose sanctions limited to what is 'sufficient to deter

repetition of such conduct.' "); *Freeman v. Bianco* (S.D.N.Y. Jan. 24, 2003) No. 02 Civ. 7525(GEL), 2003 WL 179777, at *5 ("Rule 11(c) permits the Court to impose sanctions for violations of Rule 11(b)."). "The decision as to whether to award sanctions pursuant to Rule 11 is subject to the Court's discretion." *Ulla–Maija, Inc. v. Kivimaki* (S.D.N.Y. Jan. 23, 2003) No. 02 Civ. 3640(AGS), 2003 WL 169777, at *8; *see also Morley v. Ciba–Geigy Corp.* (2d Cir.1995) 66 F.3d 21, 24 (quoting *Sanko Steamship Co., Ltd. v. Galin* (2d Cir.1987) 835 F.2d 51, 53) (" '[D]istrict courts generally have wide discretion in deciding when sanctions are appropriate.' ").

■ Here, Koala argues that Safe–Strap and its attorneys violated Rule 11(b)(2) when they advanced claims and contentions that were not warranted either by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. *See* Fed.R.Civ.P. 11(b)(2). "Attorneys have a duty under Rule 11 not to advance legal contentions that are unwarranted by existing law or that constitute a frivolous argument to change the law." *Siegel v. Pro-Ex Securities* (S.D.N.Y. June 3, 2002) No. 02 Civ. 610(DLC), 2002 WL 1203851, at *2. "In the context of patent infringement actions, [Rule 11] require[s] that an attorney interpret the pertinent claims of the patent in issue before filing a complaint alleging patent infringement." *Antonious v. Spalding & Evenflo Companies, Inc.* (Fed.Cir.) 275 F.3d 1066, 1072, *reh'g denied* (2002) 281 F.3d 1258. Although an attorney is allowed to consult his client when he engages in such claim construction, he may "not rely solely on the client's claim interpretation, but instead [must] perform an independent claim analysis." *Id.* He may be sanctioned for a violation of Rule 11(b)(2) where a reasonable attorney

would have concluded that the claim construction proposed by the actual attorney in question was frivolous.[2] *Id.* at 1073–1074. "'An argument constitutes a frivolous legal position if, under an objective standard of reasonableness, it is clear...that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands.'" *Morley*, 66 F.3d at 25 (quoting *Caisse Nationale de Credit Agricole–CNCA, New York Branch v. Valcorp, Inc.* (2d Cir.1994) 28 F.3d 259, 264); *see also Gurary v. Winehouse* (2d Cir.2000) 235 F.3d 792, 798, *cert. denied sub nom., Guarary v. United Diagnostics, Inc.* (2001) 534 U.S. 826, 122 S.Ct. 66, 151 L.Ed.2d 33 (quoting *Mareno v. Rowe* (2d Cir.1990) 910 F.2d 1043, 1047, *cert. denied* (1991) 498 U.S. 1028, 111 S.Ct. 681, 112 L.Ed.2d 673) ("Rule 11 is violated when it is 'clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify, or reverse the law as it stands.'").

■ Koala also asserts that Safe–Strap and its attorneys violated Rule 11(b)(3) when they advanced contentions and allegations that lacked evidentiary support. *See* Fed.R.Civ.P. 11(b)(3). Allegations of patent infringement are "subject to the requirement of Rule 11(b)(3) that all allegations and factual contentions have evidentiary support." *Antonious*, 275 F.3d at 1074. A party or an attorney violates Rule 11(b)(3) when he falsely represents to the Court that the allegations and other factual contentions he made have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. *See Sichel v. UNUM Provident Corp.* (S.D.N.Y.2002) 230

F.Supp.2d 325, 332; *see also Antonious,* 275 F.3d at 1074 ("[A]n attorney violates Rule 11(b)(3) when an objectively reasonable attorney would not believe, based on some actual evidence uncovered during the prefiling investigation, that each claim limitation reads on the accused device either literally or under the doctrine of equivalents."). Under Rule 11(b)(3), "sanctions may not be obtained unless a particular allegation is utterly lacking in support." *O'Brien v. Alexander* (2d Cir.1996) 101 F.3d 1479, 1489. Courts typically look for statements which rise to the level of direct falsehoods before they find that sanctions are warranted pursuant to Rule 11(b)(3). *See Sichel,* 230 F.Supp.2d at 332; *Chum Ltd. v. Lisowski* (S.D.N.Y. Mar. 12, 2001) No. 98 Civ. 5060(KMW), 2001 WL 243541, at *14.

The Court does not reach the substance of Koala's allegations at this time. Instead, as the ensuing discussion explains, the Court denies Koala's Rule 11 motion in part because it serves, in an improper fashion, as a surrogate for a summary judgment motion. The Court defers the resolution of the remaining Rule 11 issues until the end of the litigation.

## II. Rule 11 Sanctions Are Not A Proper Substitute For Summary Judgment

Koala moves for sanctions under unusual circumstances. To date, the Defendant has not moved this Court to dismiss this action or for judgment on the pleadings. In addition, although the parties disagree about the manner in which the '687 Patent should be construed, neither party has sought summary judgment or asked the Court to conduct a claim construction

---

**2.** Since Kola seeks, *inter alia,* monetary sanctions against both Safe–Strap's attorneys *and* Safe–Strap itself, the Court notes that "[m]onetary sanctions may not be awarded against a represented party for a violation of [Rule]

11(b)(2)." Fed.R.Civ.P. 11(c)(2)(A). "Monetary responsibility for such violations is more properly placed on the party's attorneys." Fed.R.Civ.P. 11 advisory committee's note (1993 Amendments).

hearing in accordance with *Markman v. Westview Instruments, Inc.* (1996) 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577.

In other words, Koala has not yet challenged the legal sufficiency or efficacy of this patent infringement action through the channels afforded by the Federal Rules of Civil Procedure or the methods employed by courts in conformity with the *Markman* decision. Instead, Koala filed a motion for sanctions on November 5, 2002, just two months after Safe–Strap initiated this lawsuit.

Koala's decision to move for sanctions before the merits of the Complaint had been tested, although unusual, is not unique. *See, e.g. Lebovitz v. Miller* (7th Cir.1988) 856 F.2d 902, 903–905; *Smith & Green Corp. v. Trustees of Constr. Industry & Laborers Health & Welfare Trust* (D.Nev.2003) 244 F.Supp.2d 1098, 1100–1104; *Dome Patent L.P. v. Permeable Tech., Inc.* (W.D.N.Y.1999) 190 F.R.D. 88, 89–90. The Defendant's efforts to pursue sanctions at this early stage in the litigation, atypical though they may be, would not, without more, justify the denial of Koala's motion.[3]

**3.** If anything, parties that seek sanctions for the submission of a complaint are encouraged to file a Rule 11 motion promptly after the complaint is filed. Although the text of Rule 11 itself "fails to specify when a Rule 11 motion should be brought," *Ridder v. City of Springfield* (6th Cir.1997) 109 F.3d 288, 295, *cert. denied* (1998) 522 U.S. 1046, 118 S.Ct. 687, 139 L.Ed.2d 634, the Advisory Committee Notes for Rule 11 state that, "ordinarily," Rule 11 motions "should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely." Fed.R.Civ.P. 11 advisory committee's note (1993 Amendments); *see also* Fed.R.Civ.P. 11 advisory committee's note (1983 Amendments) ("A party seeking sanctions should give notice to the court and the offending party promptly upon discovering a basis for doing so."); *Kaplan v. Zenner* (7th Cir. 1992) 956 F.2d 149, 150–151 ("[W]here appropriate, [Rule 11] motions should be filed . . . as soon as practicable after discovery of a Rule 11 violation."); *Price v. Hawaii* (D.Haw.1992) 789 F.Supp. 330, 335–336 ("A motion for sanctions under Rule 11 . . . should be denied when the moving party fails to act promptly."). Parties that initially remain idle after a Rule 11 violation has come to their attention risk the denial of their subsequent Rule 11 motion on the basis of unreasonable delay. *See, e.g. General Motors Acceptance Corp. v. Bates* (5th Cir.1992) 954 F.2d 1081, 1086–1087 (affirming the denial of a Rule 11 motion filed two years and nine months after the alleged violation); *Weinreich v. Sandhaus* (S.D.N.Y.1994) 156 F.R.D. 60, 63 (denying Rule 11 motion as "untimely" where the great majority of the allegedly sanctionable conduct occurred three to six years before the

motion was filed); *Price,* 789 F.Supp. at 336 (denying as untimely a Rule 11 motion filed more than two years after the dismissal of the case); *Connecticut v. Ins. Co. of America* (D.Conn.1988) 121 F.R.D. 159, 162–163 (denying motion for sanctions on the basis of "unreasonable delay" where the motion was filed one year after the case was removed and almost eight months after the case was remanded). When, as here, the "inappropriate paper" averred to is the complaint, the foregoing considerations suggest that the party which hopes to secure sanctions for the submission of that pleading should move for sanctions promptly after the complaint is filed.

Moreover, when Rule 11 was amended in 1993, a "safe harbor" provision was added. In accordance therewith, parties seeking sanctions must now serve their motion papers on opposing counsel at least twenty-one days prior to filing the motion with the Court. *Kron v. Moravia Central School District* (N.D.N.Y. May 3, 2001) No. 98–CV–1876 (FJS/GJD), 2001 WL 536274, at *2; *see also* Fed.R.Civ.P. 11(c)(1)(A). This provision was added to Rule 11 with the intention of affording a party a " 'safe harbor' against motions under Rule 11" whereby that party would "not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuse[d] to withdraw that position or to acknowledge candidly that it d[id] not . . . have evidence to support a specified allegation." Fed.R.Civ.P. 11 advisory committee's note (1993 Amendments); *see also Kron,* 2001 WL 536274, at *2.

The " 'safe harbor' functions as a practical time limit, and [Rule 11] motions have been disallowed as untimely when filed after a

However, in the Defendant's motion and the supporting briefs and declarations which followed, Koala, relying to a significant extent on the Anscher Patents and the '687 Patent's prosecution history, asserted that Safe–Strap and its attorneys violated Rule 11 because they had engaged in an improper analysis of the relevant claims and prior art. In essence, the parties argue over the proper meaning of the phrase "affixedly secured" and the scope of prior art; Koala contends that its construction of the claim and the prior art is correct and that Safe–Strap's action should therefore, as a sanction, be dismissed as frivolous. In effect, Koala hopes to secure summary judgment in the guise of sanctions.

Koala's Rule 11 motion is, *inter alia,* a transparent effort to procure a favorable *Markman* claim construction determination and to thereby influence the resolution of this action. "It is well recognized that the construction of claims may resolve some or all of the issues of infringement." *Vivid Tech., Inc. v. American Science & Eng'g, Inc.* (Fed.Cir.1999) 200 F.3d 795, 803; *see also id.* at 806 ("The court's construction of the claims may lead to the summary disposition of the issue of infringement when no material facts remain in dispute...."). The motion for sanctions also asks the Court to summarily address the effect of the Anscher Patents on this litigation.

Patent infringement, literal or by equivalence, "is determined by comparing an accused product...with the properly and previously construed claims in suit." *SRI International v. Matsushita Electric Corp. of America* (Fed.Cir.1985) 775 F.2d 1107, 1121. Hence, patent infringement analysis involves two steps. *Vivid Tech., Inc.,* 200 F.3d at 803. "First, the meaning and scope of any disputed terms and limiting expressions in the claims are determined as a matter of law." *Id.* Thereafter, "the

point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission." *In re Pennie & Edmonds LLP* (2d Cir. 2003) 323 F.3d 86, 89; *see also Ridder,* 109 F.3d at 297 ("[A]dhering to the rule's explicit language and overall structure,...sanctions under Rule 11 are unavailable unless the motion for sanctions is served on the opposing party for the full twenty-one day 'safe harbor' period before it is filed with or presented to the court; this service and filing must occur prior to final judgment or judicial rejection of the offending contention."). In sum, in the wake of the 1993 Amendments to Rule 11, "a party may no longer wait until the end of the litigation to serve up the Rule 11 violation." Georgene M. Vairo, Rule 11 Sanctions § 7.07[a] (Richard G. Johnson ed., 3d ed. forthcoming 2003); *see also* Fed.R.Civ.P. 11 advisory committee's note (1993 Amendments) ("Given the 'safe harbor' provisions...a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention)."). Accordingly, a party which seeks sanctions for the filing of a complaint should not necessarily forebear from filing a Rule 11 motion until the offending complaint is dismissed via summary judgment. *See Ridder,* 109 F.3d at 297 ("Quite clearly...a party cannot wait until summary judgment to move for sanctions under Rule 11.").

The Court notes that, despite the aforementioned principles, which are likely to influence when a *party* will choose to file its motion for sanctions, the same considerations do not control the timing of a district court's resolution of Rule 11 issues. "Rule 11 does not specify a time limit for deciding a motion for imposition of sanctions...A court may defer its ruling until the end of the case to prevent conflicts of interest and attorney-client privilege problems or for other reasons that justify delay." 2 James Wm. Moore et al., Moore's Federal Practice § 11.22[1][g] (3d ed.2002); *see also* Fed.R.Civ.P. 11 advisory committee's note (1983 Amendments) ("The time when sanctions are to be imposed rests in the discretion of the trial judge. However, it is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation.").

claims as construed are applied to the accused device or method." *Id.*

■ In *Markman v. Westview Instruments, Inc.* (Fed.Cir.1995) 52 F.3d 967, 979, *aff'd* (1996) 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577, the Federal Circuit, in an *en banc* decision, held that a court must determine the proper construction of a claim as a matter of law. The Supreme Court agreed that the construction of a claim falls within the exclusive province of the court and affirmed the Federal Circuit's determination. *Markman,* 517 U.S. at 372, 116 S.Ct. 1384. However, the *Markman* decisions did not "require a district court to follow any particular procedure in conducting claim construction." *Ballard Medical Products v. Allegiance Healthcare Corp.* (Fed.Cir.2001) 268 F.3d 1352, 1358. Nonetheless, although *Markman* does not explicitly prescribe how claim construction should be accomplished, *Markman* ordinarily leaves a district court with three options. *Moll v. Northern Telecom, Inc.* (E.D.Pa.1995) 37 U.S.P.Q.2d 1839, 1842, 1995 WL 733389, *aff'd* (Fed. Cir.1997) 119 F.3d 17, 1997 WL 394241, at \*1; *Elf Atochem North America, Inc. v. Libbey–Owens–Ford Co., Inc.* (D.Del.1995) 894 F.Supp. 844, 850.

First, courts can choose to conduct a separate bench trial in an effort to resolve the disputes surrounding claim interpretation before trial. *See Moll,* 37 U.S.P.Q.2d at 1842; *Elf Atochem North America, Inc.,* 894 F.Supp. at 850. The express purpose of such a so-called " '*Markman* ' hearing is for the court to interpret the claims of a contested patent." *Funai Electric Co., Ltd. v. Orion Electric Co., Ltd.* (S.D.N.Y. Aug. 7, 2002) Nos. 01 Civ. 3501(AGS)(JCF) and 02 Civ. 2605(AGS)(JCF), 2002 WL 1808419, at \*11; *see also Gallant v. Telebrands Corp.* (D.N.J.1998) 35 F.Supp.2d 378, 401 ("The purpose of a *Markman* Hearing is to conduct a patent infringement analysis and construe disputed claims."). Nevertheless, although "some courts have found it useful to hold hearings and issue orders comprehensively construing the claims in issue . . . [, s]uch a procedure is not always necessary." *Ballard Medical Products,* 268 F.3d at 1358; *see also Rogers v. Desa International, Inc.* (E.D.Mich.2001) 166 F.Supp.2d 1202, 1204 ("[*Markman* hearings are] not a necessary procedure.").

Courts can also interpret the claims on the paper record. *Moll,* 37 U.S.P.Q.2d at 1842; *Elf Atochem North America, Inc.,* 894 F.Supp. at 850. In other words, where the parties do not dispute any relevant facts regarding the accused product but disagree over the meaning of a particular claim, claim construction is amenable to summary judgment. *Athletic Alternatives, Inc. v. Prince Mfg., Inc.* (Fed.Cir. 1996) 73 F.3d 1573, 1578. In addition, courts can "wait until the actual trial and rule on the claim interpretation issues just prior to instructing the jury," *Moll,* 37 U.S.P.Q.2d at 1842; *see also Elf Atochem North America, Inc.,* 894 F.Supp. at 850, although "a conscientious court will generally endeavor to make this ruling before trial." *Loral Fairchild Corp. v. Victor Co. of Japan, Ltd.* (E.D.N.Y.1996) 911 F.Supp. 76, 79.

As of yet, neither party has asked this Court to conduct a *Markman* hearing. However, Koala's motion for sanctions invites this Court to issue a preliminary *Markman* determination on a paper record through the auspices of, in effect, summary judgment. Moreover, Koala's Rule 11 motion also invites this Court summarily to dispose of certain issues which focus on the effect of prior art on the instant lawsuit.[4] Koala relies, by and large, on

---

4. A court will generally compare a claim to the prior art in a patent infringement case after the court has engaged in claim construction. *See Helifix Ltd. v. Blok–Lok, Ltd.* (Fed. Cir.2000) 208 F.3d 1339, 1346; *E.I. DuPont*

the Anscher Patents as well as evidence wholly outside the pleadings, such as the '687 Patent's prosecution history,[5] to dispute Safe–Strap's claim construction and prior art arguments. Koala contends that when the claims and prior art are properly construed in response to its motion, the Court can summarily find that Safe–Strap's action is frivolous and should dismiss the lawsuit accordingly. The Defendant's Rule 11 motion for sanctions is therefore a *de facto* motion for summary judgment.

■ The Advisory Committee Notes for Rule 11 explain that "Rule 11 motions...should not be employed...to test the sufficiency or efficacy of allegations in the pleadings; *other motions are available for those purposes*." Fed.R.Civ.P. 11 advisory committee's note (1993 Amendments) (emphasis added); *see also Jawbone, LLC v. Donohue* (S.D.N.Y. June 28, 2002), No. 01 Civ. 8066(CSH), 2002 WL 1424587, at *6. In essence, "Rule 11 should not be used to raise issues of legal sufficiency that more properly can be disposed of by a motion to dismiss, a motion for a more definite statement, or a motion for summary judgment." 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1336 (2d ed. Supp.2003); *see also Blue v. United States Dep't of the Army* (4th Cir.1990) 914 F.2d 525, 535, *cert. denied sub nom., Chambers v. United States Dep't of the Army* (1991) 499 U.S. 959, 111 S.Ct. 1580, 113 L.Ed.2d 645 ("[C]laims that are plainly meritless should be disposed of early in the course of litigation through summary judgment or other pretrial motion[s]...As a general matter, dismissal of a frivolous...case on the merits should be a first option, whereas imposition of sanctions should be a matter of last resort.").[6] Hence, a Rule 11 motion for sanctions is not a proper substitute for a motion for summary judgment.[7]

---

*de Nemours and Co. v. Sacks Industrial Corp.* (D.Del. Mar. 19, 2001) Nos. Civ. A. 99–696–SLR and Civ. A. 99–903–SLR, 2001 WL 652030, at *2; *see also Oakley, Inc. v. Sunglass Hut International* (Fed.Cir.2003) 316 F.3d 1331, 1339. Under certain circumstances, issues relating to prior art may be amenable to summary judgment. *See, e.g. Merck & Co., Inc. v. Mylan Pharmaceuticals, Inc.* (E.D.Pa.1998) 19 F.Supp.2d 334, 347, *aff'd* (Fed.Cir.1999) 190 F.3d 1335.

5. "It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of the record, *i.e.* the patent itself, including the claims, the specification and, *if in evidence,* the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.* (Fed.Cir.1996) 90 F.3d 1576, 1582 (emphasis added). "This history contains the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims." *Id.*

The prosecution history, without more, falls outside the pleadings. *See Cortland Line Co., Inc. v. Orvis Co., Inc.* (N.D.N.Y. Jan. 5, 1997) No. 97–CV–1294, 1997 WL 808608, at *3. As such, courts often refuse to consider such materials on a motion to dismiss, *see id.* at

*2–*3, and generally "look to the patent's prosecution history [only] *if it is part of the record in the case.*" *Allied Gator, Inc. v. NPK Constr. Equip., Inc.* (N.D.Ohio 1996) 937 F.Supp. 694, 697, *appeal denied* (Fed.Cir. 1997) 111 F.3d 142, 1997 WL 173204, at *1 (emphasis added).

6. *But see Smith & Green Corp.*, 244 F.Supp.2d at 1103–1108 (evaluating, *inter alia*, the legal sufficiency of the plaintiff's complaint on a Rule 11 motion despite the admonition that Rule 11 should not be used to test the legal sufficiency of an action); *Dome Patent L.P.,* 190 F.R.D. at 90–91 (same). To the extent that these cases considered the legal sufficiency of the complaints before them, this Court declines to follow in their footsteps. Were the Court to do otherwise, the Court would need to ignore the Advisory Committee Notes for Rule 11, which expressly state that Rule 11 motions are not to be employed as devices to test the legal sufficiency of allegations in the pleadings since other motions are available for those purposes. *See* Fed.R.Civ.P. 11 advisory committee's note (1993 Amendments).

7. The Court does not suggest that a party needs to file a motion for summary judgment

The distinct approaches which courts employ in the disposition of Rule 11 and summary judgment motions underscore the significance of the foregoing principle. There are meaningful differences between the purposes and standards associated with Rule 11, which governs the imposition of certain types of sanctions, and Rule 56, which governs motions for summary judgment. *See Mann v. G & G Mfg., Inc.* (6th Cir.) 900 F.2d 953, 960–961, *cert. denied sub nom. Sloan v. G & G Mfg., Inc.* (1990) 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398.

"The purpose behind Rule 11 is to deter abusive litigation tactics by imposing an affirmative duty to conduct a reasonable inquiry into the factual and legal viability of claims." *Gaines v. Gaston* (S.D.N.Y. Sept. 8, 1998) No. 92 Civ. 643(DNE), 1998 WL 574380, at *3 (internal citation omitted); *see also MAI Photo News Agency, Inc. v. American Broadcasting Co., Inc.* (S.D.N.Y.2001) 59 U.S.P.Q.2d 1250, 1256 ("The purpose of Rule 11 is to discourage attorneys from bringing frivolous court actions."). Under Rule 11, the district court measures the conduct of the non-moving party's counsel "by an objective standard of reasonableness under the circumstances." *Manhattan Life Ins. Co. v. A.J. Stratton Syndicate (No. 782)* (S.D.N.Y. 1990) 132 F.R.D. 139, 143; *see also In re Pennie & Edmonds LLP* (2d Cir.2003) 323 F.3d 86, 90 ("The mental state applicable to liability for Rule 11 sanctions initiated by motion is objective unreasonableness...."). "The district court then weighs the evidence to determine if counsel's pleadings, motions or papers are well-grounded in fact or warranted by existing law." *Mann,* 900 F.2d at 961; *cf. Curley v. Brignoli Curley & Roberts, Associates* (S.D.N.Y.1989) 128 F.R.D. 613, 616. Courts ordinarily defer this determination until the end of the litigation. *See Mann,* 900 F.2d at 960 ("[A] Rule 11 motion is generally determined at the end of the proceedings."); *see also Archie Comic Publications, Inc. v. Decarlo* (S.D.N.Y. Nov. 21, 2000) No. 00 Civ. 5686(LAK), 2000 WL 1731341, at *1 (internal citation omitted) (" '[T]he time when sanctions are to be imposed rests in the discretion of the trial judge.' " Indeed,...this " 'normally will be determined at the end of the litigation' in the case of pleadings...."); *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.* (S.D.N.Y. May 2, 2000) No. 00 Civ. 1115(LAK), 2000 WL 528633, at *1 ("The Advisory Committee Note to the 1983 amendment to Rule 11 makes clear that '[t]he time when sanctions are to be imposed rests in the discretion of the trial judge...[I]t is anticipated that, in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation....' "); *Wallace v. Life Ins. of North America* (S.D.N.Y. Feb. 22, 1996) No. 93 Civ. 6056(CSH), 1996 WL 79329, at *1 ("[I]t is the Court's practice to defer resolution of Rule 11 issues until the end of the litigation.").

██ In assessing whether Rule 11 sanctions should be imposed, the court does not judge the merits of an action. *Cooter & Gell v. Hartmarx Corp.* (1990) 496 U.S. 384, 396, 110 S.Ct. 2447, 110 L.Ed.2d 359. Rather, the court determines "a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Id.* Although a court has the discretion to dismiss an

---

as a precondition to the recovery of sanctions. The law is to the contrary. *See Blue,* 914 F.2d at 535. Nevertheless, although a party need not move for summary judgment, a party cannot invoke Rule 11 to secure that same category of relief on the merits in lieu of a motion for summary judgment. The Advisory Committee Notes explicitly proscribe the use of Rule 11 as a medium by which to test the sufficiency or efficacy of a pleading. *See* Fed. R.Civ.P. 11 advisory committee's note (1993 Amendments).

action with prejudice as a sanction pursuant to Rule 11, *Carman v. Treat* (8th Cir.1993) 7 F.3d 1379, 1382; *see also Marina Mgmt. Serv., Inc. v. Vessel My Girls* (D.C.Cir.) 202 F.3d 315, 325, *cert. denied* (2000) 531 U.S. 985, 121 S.Ct. 441, 148 L.Ed.2d 446 ("Dismissal is a legitimate sanction under Rule 11...."); *Dome Patent L.P.*, 190 F.R.D. at 90 ("[Rule 11] sanctions may be nonmonetary as well as monetary, and can include dismissal."); *Dixon v. Caulfield* (N.D.Cal. July 11, 1997) No. C–96–3837–VRW, 1997 WL 414163, at *1, *aff'd* (9th Cir.1999) 201 F.3d 443, 1999 WL 997288, at *1 ("Dismissal [pursuant to Rule 11] may be an appropriate sanction under certain circumstances."), "[d]ismissal is the harshest sanction available to a district court and should thus 'be imposed only in extreme circumstances.'" *Gilpin v. Phillip Morris International, Inc.* (S.D.N.Y. July 8, 2002) No. 01 Civ.

5960(RLC), 2002 WL 1461433, at *3 (quoting *Jones v. Niagara Frontier Transp. Auth.* (2d Cir.1987) 836 F.2d 731, 734–735, *cert. denied* (1988) 488 U.S. 825, 109 S.Ct. 74, 102 L.Ed.2d 50); *see also Salahuddin v. Harris* (2d Cir.1986) 782 F.2d 1127, 1132 (internal citation omitted) (It is well settled law in this Circuit that "[d]ismissal...is a drastic penalty which should be imposed only in extreme circumstances."). " 'The remedy [of dismissal] is pungent, rarely used, and conclusive. A district judge should only employ it when he is sure of the impotence of lesser sanctions.'" *Dodson v. Runyon* (2d Cir.1996) 86 F.3d 37, 39, *cert. denied* (1997) 520 U.S. 1156, 117 S.Ct. 1337, 137 L.Ed.2d 496 (quoting *Chira v. Lockheed Aircraft Corp.* (2d Cir.1980) 634 F.2d 664, 665).[8]

■ In contrast, the "mission of the summary judgment procedure is to pierce

8. Koala cites a single case, *Murray v. Dominick Corp. of Canada, Ltd.* (S.D.N.Y.1987) 117 F.R.D. 512, to support its suggestion that dismissal is a suitable sanction in this instance. (*See* Def.'s Reply Br. at 1 n. 1.) However, the facts which led Judge Sweet to impose such a drastic penalty in *Murray* emphasize the extreme circumstances which are necessary before dismissal is an appropriate sanction. In *Murray,* the court discovered during the course of trial that the plaintiff had failed to comply with its earlier discovery order. *Murray,* 117 F.R.D. at 514. To be specific, the court determined that the plaintiff had failed to produce various documents over the course of discovery which contradicted his sworn testimony as well as the pre-trial order and trial memorandum signed by his attorney. *Id.* at 514–515. Judge Sweet explained that, under those circumstances, "some sanction, beyond the mere awarding of expenses, has to be available to the court in the event that disclosures during the middle of trial indicate that certain pre-trial submissions of the plaintiff were in violation of Rule 11." *Id.* at 515. As such, after Judge Sweet found that the plaintiff's disclosures at trial revealed that certain documentary submissions filed on his behalf were not well grounded in fact in violation of Rule 11, he held that "Rule 11 pro-

vides...grounds for the sanction of dismissal of the complaint." *Id.* at 516.

The extreme circumstances present in *Murray* are far removed from the circumstances before this Court. The Court is not faced with any disclosures discovered in the midst of trial which undermine any pre-trial submissions such that dismissal is a necessary sanction above and beyond any monetary award. Nor is this a case in which there is reason to believe that monetary sanctions, if necessary, would prove insufficient to deter improper conduct. *See Dixon,* 1997 WL 414163, at *5 (dismissing case as a Rule 11 sanction where the plaintiff had previously failed to pay monetary sanctions and, accordingly, "[a] monetary sanction [would] likely [have] prove[n] insufficient to achieve the necessary level of deterrence").

Dismissal is only an appropriate sanction under Rule 11 "for serious misconduct when lesser sanctions would be ineffective or are unavailable." *Marina Mgmt. Serv., Inc.,* 202 F.3d at 325; *see also Dodson,* 86 F.3d at 39 (court may only employ the sanction of dismissal where the court finds that lesser sanctions would prove ineffective). Here, Koala has not demonstrated that lesser sanctions short of dismissal are unavailable or would prove ineffective.

the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *DeNovellis v. Shalala* (1st Cir.1997) 124 F.3d 298, 305–306 (quoting Fed.R.Civ.P. 56(e) advisory committee's note (1963 Amendments)). Given their role in the litigation process, motions for summary judgment are often decided at an earlier stage of the litigation than motions for sanctions. *See Mann,* 900 F.2d at 960. When a court evaluates whether a genuine issue of material fact exists which would preclude judgment as a matter of law, the court examines "the evidence in the light most favorable to, and draw[s] all inferences in favor of, the non-movant." *Marvel Characters, Inc. v. Simon* (2d Cir.2002) 310 F.3d 280, 286. In deciding a motion for summary judgment, the court's function "is not to weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact." *Rodriguez v. City of New York* (2d Cir.1995) 72 F.3d 1051, 1061. Rather, the court "is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. International Business Machines Corp.* (2d Cir.2002) 310 F.3d 243, 254. Whereas dismissal is rarely an appropriate sanction under Rule 11, a court which finds that a party failed to offer sufficient evidence to resist a motion for summary judgment must dismiss that party's claims. *See Morris v. Buffalo Chips Bootery, Inc.* (S.D.N.Y.2001) 160 F.Supp.2d 718, 721. For that reason, a court faced with a frivolous case should, as a first option, consider the dismissal of that action on the merits through the mechanism of summary judgment; in contrast, the imposition of sanctions is a choice of last resort. *See Blue,* 914 F.2d at 535.

In light of the significant differences between the procedures and standards associated with summary judgment and those associated with the imposition of sanctions, the dismissal of this patent infringement action on the merits via Rule 11 would subject Safe–Strap to prejudice. Such a dismissal would allow Koala to receive all the benefits of a summary judgment despite the fact that Koala chose to bypass the strictures associated with the summary judgment procedure. Moreover, a dismissal on the merits runs counter to the precepts of Rule 11, which do not call upon a court directly to judge the merits of a lawsuit.

Nor is it necessarily apparent that summary judgment is appropriate at this stage. For example, the parties appear to disagree about certain aspects of the '687 Patent's prosecution history. (*Compare* Pl.'s Opp'n to Def.'s Mot. for Sanctions ("Pl.'s Opp'n Br.") at 12–13 (arguing that the patentees never reached an agreement with the Examiner on February 15, 2000, regarding the meaning of the phrase "affixedly secured") *with* Def.'s Reply Brief at 8 n. 8 (contending that the patentees reached an agreement with the Examiner regarding the limited meaning of the phrase "affixedly secured" on February 15, 2000).) Since the parties appear to disagree about segments of the prosecution history which are arguably relevant, discovery may be necessary to ascertain, *inter alia,* what transpired during the discussion between the Examiner and the patentees on February 15, 2000.[9] In the

---

9. "Claim construction begins with the words of the claims. Generally, terms in a patent claim are given their plain, ordinary, and accustomed meaning to one of ordinary skill in the relevant art." *Prima Tek II, L.L.C. v. Polypap, S.A.R.L.* (Fed.Cir.2003) 318 F.3d 1143, 1148, *reh'g denied* (Fed.Cir. Mar. 14, 2003) 2003 U.S.App. LEXIS 6341, at *1 (internal citations omitted); *see also Texas Digi-* *tal Systems, Inc. v. Telegenix, Inc.* (Fed.Cir. 2002) 308 F.3d 1193, 1204, *cert. denied* (2003) —— U.S. ——, 123 S.Ct. 2230, 155 L.Ed.2d 1108 (courts must first make an effort "to discern the ordinary and customary meanings attributed to the words [of a claim] themselves").

absence of such discovery, it is not readily clear that summary judgment on the issues of claim construction and the effect of the relevant prior art on the '687 Patent would be appropriate.

The Court does not suggest that this apparent disagreement will, without question, preclude summary judgment with respect to these issues; such a conclusion would be inappropriate where the parties have yet to brief these issues in the context of a proper motion for summary judgment so that the Court can better ascertain which materials facts, if any, are in dispute. Nonetheless, this consideration further underscores why the instant sanctions motion, which in effect seeks summary judgment, is not the proper forum for the summary disposition of this action.[10]

■ Accordingly, to the extent that Koala moves for the dismissal of this action as a sanction for various alleged violations of Rule 11, the Court denies that motion because it is an improper substitute for a motion for summary judgment. *See Truong v. Smith* (D.Colo.1998) 28 F.Supp.2d 626, 633 (denying the defendant's motion for sanctions where the arguments in support thereof were more properly the subject of a motion for summary judgment). To the extent that Koala contends that Safe–Strap and its attorneys violated Rule 11(b)(2) and Rule 11(b)(3) when they initiated this action by filing the Complaint and seeks, through sanctions, to recover fees and costs, the Court defers the resolution of those Rule 11 issues until the end of the litigation. "Courts should, and often do, defer consideration of certain sanctions motions until the end of [the litigation] to gain a full sense of the case and to avoid unnecessary delay of disposition of the case on the merits. This is a sensible practice where [as here] the thrust of the sanctions motion is that institution of the case itself was improper." *Lichtenstein v. Consolidated Serv. Group, Inc.* (1st Cir.1999) 173 F.3d 17, 23; *see also Archie Comic Publications, Inc.*, 2000

---

Nonetheless, "[t]he record before the Patent and Trademark Office is often of critical significance in determining the meaning of the claims." *Vitronics Corp.*, 90 F.3d at 1582. Therefore, after a court has identified the plain meaning of a disputed claim term and has examined the written description and the drawings to determine whether the use of that term is consistent with the ordinary meaning of that term, " 'the same confirmatory measure must be taken with the prosecution history since statements made during the prosecution of a patent may affect the scope of the invention.' " *Prima Tek II, L.L.C.*, 318 F.3d at 1148–1149 (quoting *Rexnord Corp. v. Laitram Corp.* (Fed.Cir.2001) 274 F.3d 1336, 1343). "In some cases, this may take the form of an express disclaimer of a particular claim construction. In other cases, the statements may offer interpretative assistance to the court in construing a particular claim." *Prima Tek II, L.L.C.*, 318 F.3d at 1149 (internal citations omitted); *see also Ballard Medical Products*, 268 F.3d at 1359 ("An inventor may use the specification and the prosecution history to define what his invention is and what it is

not—particularly when distinguishing the invention over prior art."). Given these considerations, the Court may need to examine the '687 Patent's prosecution history before this lawsuit is resolved; to the extent that the parties appear to dispute the exact nature of the relevant prosecution history at this early stage, discovery may help to lay any such disputes to rest (or at least provide this Court with a more complete picture of the prosecution history).

10. Moreover, "*Markman* does not obligate [a] trial judge to conclusively interpret claims at an early stage in a case," and this Court has the discretion to engage in claim construction at a time when the parties are better able to present "a full picture of the claimed invention and the prior art." *Sofamor Danek Group, Inc. v. DePuy–Motech, Inc.* (Fed.Cir. 1996) 74 F.3d 1216, 1221. At the very least, the discovery process may afford the parties the opportunity to compile such a "full picture" before they seek a *Markman* determination via summary judgment or a *Markman* hearing.

WL 1731341, at *1; *Hallwood Realty Partners, L.P.,* 2000 WL 528633, at *1; *Wallace,* 1996 WL 79329, at *1. At the proper time, the Court will determine, if called upon to do so by the parties, whether the conduct at issue violated Rule 11(b)(2) and Rule 11(b)(3) and, if so, which sanctions are appropriate.

### III. Safe–Strap's Request For Sanctions

"Rule 11 is not a toy. A lawyer who transgresses the rule abuses the special role our legal system has entrusted to him." *Draper and Kramer, Inc. v. Baskin–Robbins, Inc.* (N.D.Ill.1988) 690 F.Supp. 728, 732. When an attorney violates Rule 11, "he can suffer severe financial sanctions." *Id.* Moreover, under certain extreme circumstances, serious misconduct may justify the dismissal of his client's case. *See Marina Mgmt. Serv., Inc.,* 202 F.3d at 325. A Rule 11 violation is therefore "a serious thing, and an accusation of such wrongdoing is equally serious." *Draper and Kramer, Inc.,* 690 F.Supp. at 732.

In its opposition brief, Safe–Strap argues that Koala's baseless accusations of misconduct merit sanctions pursuant to Rule 11(c)(1)(A) of the Federal Rules of Civil Procedure. The Plaintiff contends that such sanctions are warranted because of "Koala's failure to assert any actions on the part of Safe–Strap that would be sanctionable under Fed.R.Civ.P. 11, Koala's disregard for the filing requirements of the Fed.R.Civ.P. and Local Rules, including a Notice of Motion and any proper affidavit, and Koala's misstatements of fact in its Motion." (Pl.'s Opp'n Br. at 17.)

Rule 11(c)(1)(A) allows a court, "[i]f warranted,...[to] award to the party prevailing on the motion [for sanctions] the reasonable expenses and attorney's fees incurred in presenting or opposing the motion." Fed.R.Civ.P. 11(c)(1)(A). In short,

"the filing of a motion for sanctions is itself subject to the requirements of [Rule 11] and can lead to sanctions." Fed.R.Civ.P. 11 advisory committee's note (1993 Amendments). "Thus, where a party's motion for Rule 11 sanctions is not well grounded in fact or law, or is filed for an improper purpose, a court my find itself in the position of imposing Rule 11 sanctions on the moving party and/or her attorney." Georgene M. Vairo, Rule 11 Sanctions: Case Law Perspectives And Preventive Measures § 4.01[c][3][F] (2d ed. Supp. 1994). Although Safe–Strap has not filed a separate cross-motion for sanctions and has not afforded Koala 21 days after service of such a motion to withdraw its submissions, "[a] party defending a Rule 11 motion need not comply with the separate document and safe harbor provision when counter-requesting sanctions." *Patelco Credit Union v. Sahni* (9th Cir.2001) 262 F.3d 897, 913; *see also* Fed.R.Civ.P. 11 advisory committee's note (1993 Amendments) ("[S]ervice of a cross-motion under Rule 11 should rarely be needed since under the revision the court may award to the person who prevails on a motion under Rule 11—whether the movant or the target of the motion—reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion."); Georgene M. Vairo, Rule 11 Sanctions § 7.03(d)(1)(C) (Richard G. Johnson ed., 3d ed. forthcoming 2003) ("The safe-harbor provision need not be complied with if a party seeking sanctions is responding to a motion for sanctions.").

Rule 11(c)(1)(A) permits a court to award "reasonable expenses and attorney's fees" only to the "prevailing party" and only if such an award is "warranted." Fed.R.Civ.P. 11(c)(1)(A); *see also G–I Holdings, Inc. v. Baron & Budd* (S.D.N.Y. Aug. 21, 2002) No. 01 Civ. 216(RWS), 2002 WL 1934004, at *17. Although the Court has denied Koala's motion for sanctions in

**422**

part, the Court has deferred resolution of the remaining Rule 11 issues until the end of the litigation. Under these circumstances, any decision regarding whether Safe–Strap is the "prevailing party" and whether an award is "warranted" would be premature. As such, the Court also defers the resolution of Safe–Strap's request for sanctions until the end of the litigation. As with Koala's Rule 11 motion, the Court will determine at a more appropriate time, if called upon to do so by the parties, whether Koala should be sanctioned in accordance with Rule 11(c)(1)(A).

### *CONCLUSION*

For the foregoing reasons, the Court hereby DENIES Koala's motion for Rule 11 sanctions to the extent that it seeks the dismissal of this action. The Court defers the resolution of the remaining Rule 11 issues raised by both Koala and Safe–Strap until the end of the litigation.

**SO ORDERED.**